ORAL E. CHATFIELD v. HENRY G. HENDERSON.

90 N. W. (2d) 227.

May 16, 1958—No. 37,375.

*George Beaverson* and *Hugh E. Maag,* for appellant.
*Raeder Larson,* for respondent.

KNUTSON, JUSTICE.

This is an appeal from an order of the trial court denying defendant's motion for judgment notwithstanding the verdict or a new trial.

Defendant is the owner of some apartment buildings in Minneapolis. For a number of years prior to February 1954 plaintiff had been employed as a caretaker of one of defendant's apartment buildings located at 74 Spruce Place in Minneapolis. In return for the services rendered in looking after this building he received the use of an apartment in the building and his utilities and telephone free of charge. In addition thereto he was employed by defendant on other buildings, for which he was paid $1 per hour. He customarily worked 48 to 50 hours a week at such labor. During February 1954 (the exact date does not appear from the record) he suffered an injury to his knee while working in an apartment at 1405 Yale Place. He had previously injured his knee while working at Cass Lake. After his injuries in February he drew workmen's compensation benefits for about three and one-half weeks. The dispute which led to this litigation relates to work which plaintiff claims he did for defendant after his injury. It is defendant's claim that, after this injury, a new agreement was entered into under which plaintiff and his wife were to look after the apartment building and do whatever else they could therein, for which they would be paid $20 per week in addition to their apartment, and that, in accordance with this new agreement, they have been paid in full. Plaintiff claims that, in addition to the services which he and his wife were to render for the $20-per-week payment, he continued to work on other buildings much as he had before, for which he has earned some over $1,200. He

claims to have worked about 1,200 hours and that the reasonable value of such services is $1 per hour.

It is undisputed that plaintiff and his wife moved out of their apartment on September 10, 1954. It is not clear whether he was discharged or whether he simply quit working. The jury returned a verdict in favor of plaintiff for $475. Defendant's motion for judgment notwithstanding the verdict or a new trial was denied, and this appeal followed.

The questions presented here are whether the evidence sustains the jury's finding that plaintiff is entitled to compensation above that paid by defendant and whether there are errors in the court's instructions which will be discussed hereinafter.

■ Defendant assigns as error the court's refusal to give the following requested instruction:

"The defendant claims that an agreement was entered into between himself and the plaintiff and plaintiff's wife shortly after the plaintiff was injured to the effect that plaintiff and his wife should remain in the apartment as previously and that for whatever work was performed by the plaintiff and his wife the defendant should pay $20 each week, and that this amount should be paid to plaintiff's wife. If you find that this arrangement was entered into between plaintiff and the defendant and that it was understood that plaintiff was to have no further compensation than as provided for under this arrangement, and you also find that plaintiff and his wife were paid in accord with such understanding during the full period that they performed services for the defendant then he is not entitled to recover any amount whatsoever."

Defendant's request does not embody the entire controversy. Even though a new agreement was made under which plaintiff and his wife were to be paid $20 a week, the question remains whether he did perform work in addition to that required by such agreement. In other words, did he perform services outside the scope of this employment? If he did, he would be entitled to be paid the reasonable value thereof.

The general rule followed by the weight of authority is that there is a presumption of law that all services rendered by an employee during the period for which he is employed, of a nature similar to those required of him in the course of his regular duties, are paid for by his

salary, and to overcome this presumption he must show an express agreement for extra compensation.[1] There is, however, a related rule, or possibly an exception to this rule, that where an employee performs services for his employer outside of and beyond the scope of his employment he may recover the reasonable value of such services. In Fravell v. Nett, 46 Minn. 31, 32, 48 N. W. 446, 447, a case where the facts are quite similar to those involved here, we said:

"* * * It was competent for the defendant to contract for extra or different work outside and apart from that embraced in the original contract, and in such case the facts may warrant a recovery in *assumpsit* for the value thereof."

In this case the jury could find that the services contracted for at the rate of $20 per week were confined to those rendered at 74 Spruce Place. Plaintiff claims that, in addition, he did considerable work at 1405 Yale Place. This was denied by defendant. The case devolved into a fact determination as to who was right in that respect. The trial court instructed the jury:

"It is for you to determine as to whether or not Mr. Chatfield performed services after the date of this accident and up, then, through the period which he claims. That is the crux, as I see it, of the whole case. There is testimony that he performed various services at 1405 Yale Place consisting of various types of work which he has testified to and there is testimony on the other hand denying that he did any of that work.

"There is testimony that an agreement was entered into between the parties whereby Mr. Henderson agreed to pay $20 a week because of lack of funds on the part of the Chatfields, and that Mrs. Chatfield was to go along and perform these various services which were necessary to be performed about this building. On the other hand there is a denial of that by plaintiff. Those are the—you will have to find what the true facts are."

While these instructions were not as complete as we might desire,

[1]See, Annotations, 25 A. L. R. 218 and 107 A. L. R. 705; Thibault v. National Tea Co. 198 Minn. 246, 269 N. W. 466, 107 A. L. R. 702.

they probably did present the one fact question that was determinative of the controversy, namely: Did the contract or agreement existing between the parties contemplate that Mr. and Mrs. Chatfield should do any work outside the apartment at 74 Spruce Place, and, if not, did Mr. Chatfield perform such services beyond the scope of such employment?

■ Defendant next contends that the evidence does not sustain any recovery.

Plaintiff testified that, after he was injured, he continued to do work for defendant, much as before, except for short periods when he was hospitalized for surgery. When asked what kind of work he did, he said:

"I was cleaning up, laid floor, laid tile and even leveled cement off."

He further testified that he did some paperhanging at 1405 Yale Place and some in Mayfair and that he hung paper and fixed screens in 74 Spruce Place.

With respect to the agreement made after his injury, plaintiff said:

"A. Well, he promised us, he promised $20.00 a week and that if she did painting also around there and helped and that, and helped me with the furnace and stuff and work that we generally do as caretakers, you know.

"Q. And what did Mrs. Chatfield say?

"A. She agreed to it then.

"Q. Thereafter was she paid $20.00 per week?

"A. She was paid $20.00 a week, yes.

"Q. Were any deduction ever made from that $20.00 a week?

"A. Yes, if I missed one day he deducted $2.00 off her check.

"Q. How often did that happen?

"A. Well, about two or three times, something like that."

Defendant testified that after plaintiff's injury in February he did no work except such as he was paid for under the new agreement, and defendant denied that plaintiff did any work at 1405 Yale Place.

Mrs. Chatfield's testimony seemingly supports that of defendant rather than plaintiff. She testified with respect to the new agreement:

"A. Mr. Henderson told us that he would pay us $20 a week. I

was to help out and paint and things like that and Mr. Chatfield said, well, I asked him, 'What do you think about it?' He said, as far as he was concerned it was okay, it was up to me.

"Q. What did you say?

"A. Well, I said we would, we would take it because we didn't have anything else or any other place to live at the time and we needed the work and I was proud of the work I was doing and I thought I could help him by doing it and told that to Mr. Henderson—well, I didn't tell him I wanted all the work or anything like that, what I meant was we didn't have any other home to go to. We would have to live here and one place was just as good as another and we had to eat and that was the only employment I could do at the time—

"Q. Did you accept his offer?

"A. Yes."

There is no dispute that Mrs. Chatfield was paid $20 a week from February until she and her husband moved out of the apartment in September.

While the evidence regarding the new agreement after the injury—what they were supposed to do for the $20 a week and what they actually did—is far from satisfactory, we think that it is sufficient to present a jury question and that, if the jury believed Mr. Chatfield's testimony, there is some basis for the verdict returned. While it is a close case, we think that the evidence does present a jury question on this issue

■ Finally, defendant contends that it was error to permit the jury to include in its verdict a penalty under M. S. A. 181.13 or 181.14. Section 181.13, which deals with a discharged servant or employee, reads as follows:

"When any person, firm, company, association, or corporation employing labor within this state discharges a servant or employee from his employment, the wages or commissions actually earned and unpaid at the time of such discharge shall become immediately due and payable upon demand of such employee, at the usual place of payment, and if not paid within 24 hours *after such demand,* whether such employment was by the day, hour, week, month, or piece or by commissions, such

discharged employee may charge and collect the amount of his average daily earnings at the rate agreed upon in the contract of employment, for such period, not exceeding 15 days, *after the expiration of the 24 hours,* as the employer is in default, until full payment or other settlement, satisfactory to the discharged employee, is made." (Italics supplied.)

Section 181.14, which deals with an employee who quits or resigns his employment, as far as material here, reads:

"When any such employee, not having a contract for a definite period of service, quits or resigns his employment, the wages or commissions earned and unpaid at the time of such quitting or resignation shall become due and payable within five days thereafter, at the usual place of payment, and any such employer failing or refusing to pay such wages or commissions, *after they so become due, upon the demand of such employee,* at such place of payment, shall be liable to such employee *from the date of such demand* for an additional sum equal to the amount of his average daily earnings provided in the contract of employment, for every day, not exceeding 15 days in all, until such payment or other settlement satisfactory to the employee is made; provided, that if any employee having such a contract gives not less than five days' written notice to his employer of his intention to quit such employment, the wages or commissions of the employee giving such notice shall become due at the usual place of payment *24 hours after he so quits or resigns and payment thereof may be demanded accordingly,* and the penalty herein provided shall apply in such case *from the date of such demand;* * * *." (Italics supplied.)

These two statutory provisions must be read together. Inasmuch as they provide for a penalty, they should be strictly construed.[2] It is clear that they provide a penalty upon an employer for failure to pay an employee after discharge or resignation upon a demand after the wages become due under the statute. Section 181.13 provides that the wages earned or unpaid at the time of discharge become immediately due and payable upon demand of such employee. Section 181.14 provides that such wages become due and payable within five days after the employee

---

[2] 17 Dunnell, Dig. (3 ed.) § 8989.

quits or resigns and that the penalty attaches when any employer fails or refuses to pay such wages after they become so due upon demand of the employee at the place of payment.

Both sections contemplate a demand after the wages become due under the statute. Under § 181.13, the penalty attaches only after the expiration of 24 hours after such demand, and under § 181.14 it attaches only after such demand. Until there is a demand as required by the statute, after resignation or discharge, the statutory provisions have no application.

Plaintiff testified that he asked defendant for payment in March 1954 and talked to him about it in July 1954. There is not one word of testimony that he made a demand after his discharge or resignation until this action was started. It seems clear to us that there has been no compliance with the statute and that, therefore, it was error to permit the jury to include the penalty provided thereby as part of its verdict. Inasmuch as the verdict is a general one, we have no way of knowing whether the jury did include a penalty for failure to pay in accordance with these statutory provisions. Therefore, there must be a new trial. While the amount involved is not large, the proper application of these statutory provisions is of considerable importance to employers and employees alike. Clearly, it was error to submit these statutory provisions to the jury under the evidence in this case.

Reversed and new trial granted.