John H. BREKKE, Respondent,

v.

THM BIOMEDICAL, INC., Appellant.

No. C8–03–119.

Supreme Court of Minnesota.

July 1, 2004.

Rehearing Denied Aug. 4, 2004.

Gerald J. Brown, Brown, Andrew & Signorelli, P.A., Duluth, MN, for Appellant.

John G. Fillenworth, Duluth, MN, for Respondent.

## OPINION

HANSON, Justice.

Respondent employee, Dr. John H. Brekke, brought an action against appellant employer, THM Biomedical, Inc. (THM), under Minn.Stat. § 181.79 (2002) for a statutory penalty based on THM's unauthorized deduction from Dr. Brekke's salary of the principal of a debt owed by Dr. Brekke to THM. The district court ruled that the deduction violated Minn. Stat. § 181.79 and awarded Dr. Brekke twice the amount deducted. The court of appeals affirmed the district court. *Brekke v. THM Biomedical, Inc.*, 667 N.W.2d 452 (Minn.App.2003). We reverse and remand.

In November 1990, a group of individuals formed THM Biomedical, Inc., to commercialize patents on medical devices that had been developed by Dr. Brekke. Although Dr. Brekke had developed the patents, he no longer owned them at the time that THM was formed. In fact, he had exhausted his capital in the failed efforts of two predecessor companies.

Dr. Brekke received 15 percent of THM common stock for services to be performed pursuant to the terms of an employment agreement with THM.[1] Under the terms of his employment agreement, Dr. Brekke was obligated to perform such services as directed by the president of THM and was entitled to receive wages or salary. Section Fourteen of the employment agreement obligated Dr. Brekke to disclose to THM all pertinent information he acquired before or during his employment with THM, stating in part:

> Employee shall communicate and channel to Employer all knowledge, business, and customer contacts and any other matters of information that could concern or be in any way beneficial to the business of Employer, whether acquired by Employee before or during the term of this Agreement.

In addition, Dr. Brekke served on THM's board of directors and as Vice President of Research and Development.[2]

---

1. In August of 2000, when THM's assets were acquired by Kensey Nash Corporation, Dr. Brekke owned 18.6 % of THM's stock.

2. THM's board of directors consisted of three individuals. From 1993 until the time at which THM was acquired, Thomas Maas, Dr. Brekke, and William Maas, the son of Thomas Maas, comprised THM's board of directors. Each board member was entitled to one vote.

In August and October of 1991, THM made loans to Dr. Brekke and issued promissory notes in the amounts of $10,000 and $55,000, respectively. Although the original expectation was that Dr. Brekke would repay the notes in 1991, he was unable to do so. On April 28, 1993, Dr. Brekke repaid $5,000 on the notes. Thereafter, the $60,000 balance of the notes remained outstanding, was regularly listed as a receivable on THM's balance sheets and was annually acknowledged by Dr. Brekke to THM's auditors.

THM adopted the practice of only paying employee salary if it could do so from current cash flow. For the 6–year period from 1993 through 1998, a portion of Dr. Brekke's salary was accrued but unpaid. As Dr. Brekke's counsel acknowledged at oral argument, this practice was uniform for all employees and Dr. Brekke acquiesced in it. The THM balance sheet dated June 30, 2000, showed that Dr. Brekke's accrued unpaid salary had accumulated to a total of $188,872.98.

In the summer of 2000, while negotiating a possible sale of its assets to Kensey Nash Corporation, THM received $950,000 in settlement of a licensing dispute with a third party. As a prerequisite to any transaction with Kensey Nash, THM was required to "clean up its balance sheet" by collecting its assets and paying off its liabilities. Dr. Brekke's notes to THM were part of the assets that were to be collected and his accrued salary was one of the liabilities that was to be paid.

Thomas Maas testified that, at a meeting of THM's board of directors on June 14, 2000, he informed Dr. Brekke that the amount of his notes would be deducted from his accrued unpaid salary. At a meeting on July 11, 2000, between William Maas and Dr. Brekke, Maas reported that, after deducting taxes, loan principal and interest, Dr. Brekke would net about $20,000 from his accrued salary. Dr. Brekke objected to the deduction and asked that the loans and the accompanying interest be forgiven as an honorarium for his service with THM. The board refused. On July 13, 2000, Dr. Brekke was presented with a "pro forma check," which showed a deduction for the loan principal, but not for interest. Dr. Brekke said that he preferred to be paid the full value of the accrued salary and that he would separately pay his notes to THM, to create a better documented record of the transactions. The board declined this request and, on July 14, 2000, issued a net check for $59,700.71, which reflected Dr. Brekke's accrued salary less tax withholdings and a $60,000 deduction in loan principal.[3]

After receiving the pro forma check but before receiving the actual check, Dr. Brekke consulted with his attorney and was informed that there was the possibility that THM's proposed method of payment would expose it to liability for a statutory penalty of $120,000 under section 181.79. Dr. Brekke did not communicate that information to THM, but accepted and cashed the check from THM for $59,200.71, representing full payment of his accrued salary after deduction of his $60,000 debt and tax withholdings. At the

---

**3.** THM did not deduct the interest, which Dr. Brekke was obligated to pay under the terms of the promissory notes. However, in district court THM attempted to collect the unpaid interest from Dr. Brekke in a counterclaim for $42,506.76. The district court denied THM's counterclaim. It found that Kensey Nash now owns the right to pursue recovery of any outstanding liability of Dr. Brekke.

Kensey Nash was not a party to this action and has not pursued this claim. The district court further found that THM "no longer has any interest in the notes as creditor. Defendant no longer has the right to recover from plaintiff on the notes." This finding and a corresponding conclusion of law to that effect were not appealed by THM.

time Dr. Brekke accepted the check, he knew that the satisfaction of his debt to THM was essential to completing the proposed sale to Kensey Nash, from which he stood to gain substantially.

As the negotiations with Kensey Nash proceeded, Dr. Brekke was required to make positive representations to Kensey Nash about the accuracy of THM's balance sheet, which by then did not reflect any unpaid liability to Dr. Brekke. As an essential step to completing the sale to Kensey Nash, Dr. Brekke signed an officer's certificate that represented that THM had no undisclosed liabilities. As a consequence of signing that certificate and not disclosing the potential liability for a statutory penalty, Dr. Brekke caused THM to breach its disclosure obligations to Kensey Nash, with the consequence that Kensey Nash would later deny any obligation to THM to assume THM's liability to Dr. Brekke.

When the sale to Kensey Nash was complete, Dr. Brekke received just over $2 million for his shares of THM. Within 60 days of the closing, he commenced this action to recover a $120,000 penalty from THM under Minn.Stat. § 181.79. THM denied any liability and asserted the affirmative defenses of waiver and estoppel.

The district court concluded that THM wrongfully deducted $60,000 from Dr. Brekke's wages, in violation of Minn.Stat. § 181.79, and awarded Dr. Brekke $120,000 in damages, twice the amount of the deduction. The district court did not make findings on or otherwise address THM's waiver and estoppel defenses, except to conclude that Dr. Brekke's position as an officer, director and shareholder did not disqualify him from relying on section 181.79 and that none of his actions or inactions provided consent to the deduction. The court of appeals affirmed the judgment in favor of Dr. Brekke. *Brekke*, 667 N.W.2d at 452.

## I.

■ We first address whether section 181.79 applies to Dr. Brekke's accrued unpaid salary. That section provides:

> No employer shall make any deduction, directly or indirectly, from the wages due or earned by any employee, who is not an independent contractor, for lost or stolen property, damage to property, or to recover any other claimed indebtedness running from employee to employer, unless the employee, after the loss has occurred or the claimed indebtedness has arisen, voluntarily authorizes the employer in writing to make the deduction or unless the employee is held liable in a court of competent jurisdiction for the loss or indebtedness.

Minn.Stat. § 181.79, subd. 1. THM argues that Dr. Brekke should not be treated as an "employee," because of his position as an officer, director and shareholder, and that the salary of an officer of a closely held corporation should not be treated as "wages."

■ A district court's interpretation of a statute is reviewed de novo. *State v. Tennin*, 674 N.W.2d 403, 406 (Minn.2004). When the words of a law in their application to an existing situation are clear and free from all ambiguity, the letter of the law shall not be disregarded under the pretext of pursuing the spirit. Minn.Stat. § 645.16 (2002). Statutory provisions that provide for a penalty are strictly construed. *Chatfield v. Henderson*, 252 Minn. 404, 410, 90 N.W.2d 227, 232 (1958).

Section 181.79 provides four exceptions. The statute does not apply in cases where (a) the employee is held liable in a court of competent jurisdiction for the indebtedness; (b) there is a contrary provision in a collective bargaining agreement; (c) the deduction is made pursuant to rules established by an employer for employees who are commissioned salespeople, where the

rules are used for purposes of discipline; or (d) the employee voluntarily authorizes in writing, prior to incurring the debt, that the debt shall be deducted from the employee's wages. THM does not claim that the deduction from Dr. Brekke's salary was authorized by any of these exceptions.

Although Dr. Brekke was more than just an employee of THM, it is undisputed that he was also an employee. And although the term "wages" is not specifically defined for section 181.79, it is broadly defined in the equal pay provisions of Minn.Stat. ch. 181 to mean "all compensation for performance of services by an employee for an employer * * *." Minn. Stat. § 181.66, subd. 4 (2002). We see no reason to apply a different definition of wages for section 181.79. Therefore, a plain reading of the statute supports the conclusion that section 181.79 applies to these facts. Dr. Brekke was an "employee" of THM, his accrued salary represented "wages" that were earned and due, and THM made an unauthorized deduction of a debt running from the employee to the employer from wages due.

## II.

■ The conclusion that section 181.79 applies to this fact situation does not end the inquiry. THM has asserted the affirmative defenses of waiver and estoppel, each of which assumes that the statute applies but provides a personal bar to preclude Dr. Brekke from making a claim under the statute. Because the statute did

not supercede or abrogate these common law defenses, there is factual support for them in the record, and the district court made no findings or conclusions concerning them, we conclude that the judgment should be reversed and the matter remanded to the district court to address the waiver and estoppel defenses.[4]

We do not consider THM's waiver and estoppel defenses as an exception to section 181.79 because that section already enumerates the permitted exceptions. The question, then, is whether the statute, by specifying certain exceptions to its application, should be interpreted as superceding or abrogating common law defenses that would otherwise be available to preclude enforcement of the statutory remedy. We conclude that section 181.79 was not intended to supercede or abrogate the common law defenses of waiver and estoppel. In fact, we essentially reached that conclusion some years ago when we decided *Stiff v. Associated Sewing Supply Co.*, 436 N.W.2d 777 (Minn.1989).

In *Stiff*, an employee brought a claim for unpaid commissions and for penalties under section 181.79. *Stiff*, 436 N.W.2d at 778. We considered whether section 181.79 superceded the common law doctrine of forfeiture, whereby an employee who materially breaches his employment agreement (as by embezzlement) forfeits his right to any unpaid compensation. *Stiff*, 436 N.W.2d at 780. We said that the district court's conclusion that forfeiture

4. Dr. Brekke argues that the waiver and estoppel defenses were not preserved for appellate review. Although the issues were not perfectly framed before the court of appeals or in the petition for further review, we conclude that these defenses are before us because the arguments before the court of appeals and in the petition for further review raise questions that have no relevance except to the defenses of waiver and estoppel. Thus, the questions whether Dr. Brekke had an obligation to "disclose material information to

fellow officers and directors," whether his breach of that obligation should "preclude him from personally benefiting from his breach by collecting the statutory penalty as an 'employee,'" and whether the district court "abuse[d] its discretion by failing to make any factual findings regarding [Dr. Brekke's] fiduciary duties," have no relevance to the construction of the statute but are central to the application of the defenses of waiver and estoppel.

applied "was clearly correct unless that common law doctrine has now been superceded by statute." *Id.* Although forfeiture was not one of the exceptions expressed in the statute, we held that it had not been superceded by the statute. *Id.*

*Stiff* is not completely analogous to the present case for two reasons. First, it is narrower than the present case because the court also determined that the same acts that supported forfeiture prevented the employee from proving that any commissions were "earned," as required by the statute. *See id.* THM does not dispute that Brekke's unpaid salary was "earned." But, second, it is also broader because it dealt not only with the forfeiture of the penalty, but also with the forfeiture of the underlying compensation. *See id.* THM has paid Brekke all of his earned compensation and only attempts to defeat his claim for the penalty.

■ To the extent that *Stiff* determined that section 181.79 did not supercede or abrogate common law defenses, it reflects the appropriate application of well-established principles of statutory construction. "We have * * * long presumed that statutes are consistent with the common law, and if a statute abrogates the common law, the abrogation must be by express wording or necessary implication." *Ly v. Nystrom,* 615 N.W.2d 302, 314 (Minn.2000) (citing *In re Shetsky,* 239 Minn. 463, 469, 60 N.W.2d 40, 45 (1953)). *See also Shaw Acquisition Co. v. Bank of Elk River,* 639 N.W.2d 873, 877 (Minn.2002) ("Unless statutory provisions instruct otherwise, the conclusion we reach under the common law will stand."). More significantly, we have repeatedly held that statutes will be presumed to not eliminate equitable remedies and are to be strictly construed so as to not supplant or restrict "equity's normal function as an aid to complete justice." *Swogger v. Taylor,* 243 Minn. 458, 465, 68 N.W.2d 376, 382 (1955). *See also In re*

*Lakeland Dev. Corp. (Anderson v. Anderson),* 277 Minn. 432, 441–45, 152 N.W.2d 758, 764–66 (1967) (stating that the court may look to equitable principles in applying a statute). Section 181.79 makes no express reference to forfeiture, waiver or estoppel, and provides no evidence of an intent to abrogate these equitable defenses. *See* Minn.Stat. § 181.79.

Dr. Brekke argues that because section 181.79 does not allow the employer to offset for a debt that is based on an employee's misconduct, such as for "stolen property," it should be construed to preclude any consideration of an employee's misconduct. This argument conflicts with our decision in *Stiff,* which allowed consideration of an employee's misconduct for the defense of forfeiture. Further, the argument confuses two separate concepts, the misconduct that is the basis for the employee's debt and the misconduct that establishes an equitable waiver or estoppel.

Section 181.79 is clear that the employer cannot use self help to enforce a claimed indebtedness against an employee by a unilateral offset that would force the employee to take action if he disputes the indebtedness. That clear legislative directive would be seriously eroded if the prohibition against offset did not apply because the "claimed indebtedness" was based on serious misconduct by the employee. Therefore, an offset for the "claimed indebtedness" cannot be made no matter what legal theory the claimed indebtedness is based on.

THM's claim of estoppel is not based on the facts that support Dr. Brekke's indebtedness. The claimed indebtedness of Dr. Brekke is based on his loan. THM's claim of estoppel is based on Dr. Brekke's separate and independent breaches of contract and fiduciary duties. Thus, although THM did violate the statute by offsetting the loan against Dr. Brekke's wages, and that

violation would have provided Dr. Brekke with the right to seek the statutory remedy, Dr. Brekke may have waived that right or be estopped from asserting it by conduct that is wholly separate from that on which the claimed indebtedness is based. Dr. Brekke may be estopped by conduct that is independent of the indebtedness and that makes enforcement of the penalty inequitable.

### III.

█ If the defenses of waiver and estoppel have not been superceded by section 181.79, we then address the question whether the record contains evidentiary support for each of the elements of waiver or estoppel. If so, the district court erred in not addressing those defenses.

█ Equitable estoppel is a "doctrine addressed to the discretion of the court and is intended to prevent a party from taking unconscionable advantage of his own wrong by asserting his strict legal rights." *Northern Petrochemical Co. v. U.S. Fire Ins. Co.*, 277 N.W.2d 408, 410 (Minn.1979). In order to invoke equitable estoppel, the following elements must be shown:

1. There must be conduct acts, language or silence amounting to a representation or a concealment of material facts. 2. These facts must be known to the party estopped at the time of his said conduct, or at least the circumstances must be such that knowledge of them is necessarily imputed to him. 3. The truth concerning these facts must be unknown to the other party claiming the benefit of the estoppel, at the time when such conduct was done, and at the time when it was acted upon by him. 4. The conduct must be done with the intention, or at least with the expectation, that it will be acted upon by the other party, or under such circumstances that it is both natural and probable that it

will be so acted upon. * * * 5. The conduct must be relied upon by the other party, and, thus relying, he must be led to act upon it. 6. He must in fact act upon it in such a manner as to change his position for the worse, in other words, he must so act that he would suffer a loss if he were compelled to surrender or forego or alter what he has done by reason of the first party being permitted to repudiate his conduct and to assert rights inconsistent with it.

*Lunning v. Land O'Lakes*, 303 N.W.2d 452, 457 (Minn.1980) (omission in original) (quoting 3 J. Pomeroy, *A Treatise on Equity Jurisprudence* § 805 (5th ed.1941)). We conclude that the record contains evidence sufficient to show each of these elements.

#### 1. *Representation or Concealment*

Section fourteen of Dr. Brekke's employment agreement obligated him to disclose to THM the potential liability that THM could incur for a penalty under section 181.79 and, perhaps more importantly, what his intentions were concerning that liability. Such disclosure was also generally required of Dr. Brekke by virtue of his fiduciary duty as an officer and director of THM. *Advanced Communication Design, Inc. v. Follett*, 615 N.W.2d 285, 293–94 (Minn.2000) (citing *Fewell v. Tappan*, 223 Minn. 483, 493–94, 27 N.W.2d 648, 654 (1947)). Dr. Brekke's failure to disclose information about the potential liability under section 181.79 concerned a material fact that could lead THM to incur a liability of $120,000. More importantly, Dr. Brekke's misrepresentation in the officer's certificate not only misled THM about the potential liability, it caused THM to breach its disclosure obligations to Kensey Nash and defeated THM's later claims for indemnity from Kensey Nash. Although equitable estoppel could apply even where the misrepresentation and concealment were not a breach of an employment

agreement or of fiduciary duties, the presence of those breaches reinforces the need for equitable relief.

### 2. *Known to the Party Estopped*

Dr. Brekke admits that he knew of the potential liability at the time he accepted the check from THM, when he signed the officer's certificate, and when he accepted over $2 million for the sale of his shares to Kensey Nash. The court of appeals discounted Dr. Brekke's knowledge by crediting his testimony that he "did not intend to pursue the claim" when he accepted the check (and presumably when he signed the officer's certificate) and he only filed the claim after THM demanded interest. But, Dr. Brekke cannot be so facile with his intent. It would be true that Dr. Brekke would have had nothing material to disclose to THM if, at the time he accepted the check and signed the officer's certificate, he intended to forever waive his claims under the statute. But if he intended to preserve his claims, he had a duty to disclose that intent even if he was then thinking that he might not pursue them.

### 3. *Unknown to the Other Party*

There is no evidence that THM actually knew about the potential liability to Brekke. Given the magnitude of that liability, it is not credible to conclude that THM would have ignored the statute if their attention had been called to it. Dr. Brekke argues that THM should be presumed to know of the liability under section 181.79, relying on the time worn but often-misused concept that everyone is presumed to know the law. That concept does not necessarily apply to a fiduciary, who may have an expanded obligation to inform the beneficiary of the legal implications of their dealings. And Dr. Brekke's employment agreement obligated him to communicate all relevant information he acquired and did not exclude information about the law. Further, the claim of Dr. Brekke's breach is not based solely on his failure to disclose the law, but more importantly is based on his failure to disclose his intent about whether he would bring, or at least preserve, a claim for the statutory penalty. THM cannot be presumed to know that fact, which was very material to its actions and which was known only to Dr. Brekke. Finally, Dr. Brekke's breach is not limited to nondisclosure, but includes the affirmative misrepresentation that there were no liabilities of THM that were not disclosed on its balance sheet. This was a misrepresentation of fact, not of law.

### 4. *Intention*

Dr. Brekke clearly expected THM to rely on his silence and his signature on the officer's certificate. He had $2 million at stake. He undoubtedly knew that if he disclosed that he had a claim for a statutory penalty of $120,000, THM would be able to avoid that claim by the simple mechanism of an exchange of checks.

### 5. *Reliance*

THM relied on Dr. Brekke's silence and misrepresentation to expose itself to a liability that it could easily have avoided and to breach its own disclosure obligations by forwarding Dr. Brekke's misrepresentation in the officer's certificate to Kensey Nash.

### 6. *Prejudice*

THM was prejudiced by its reliance. It now faces a liability for $120,000, and it has lost any right to seek indemnification from Kensey Nash for that liability.[5]

---

5. On the other hand, Dr. Brekke was not materially prejudiced by the offset. Although Dr. Brekke testified that he would have preferred a simultaneous exchange of checks, to create a better paper trail for tax purposes, the legal consequence of that form of payment would not be materially different from an offset. Dr. Brekke did not contest his debt, and thus was not required to take any action

The district court made some findings that are consistent with these facts but it did not address or make findings or conclusions on the legal effect of Dr. Brekke's nondisclosure, his misrepresentation in the officer's certificate, or the breach of his contractual or fiduciary duties. Because such findings and conclusions are necessary to the resolution of THM's waiver and estoppel defenses, the failure of the district court to address them was error.[6]

Reversed and remanded.

GILBERT, Justice (concurring in part, dissenting in part).

I concur with the majority's conclusion that Minn.Stat. § 181.79 (2002) applies to the loan deduction taken from Dr. Brekke's wages without his consent. I respectfully dissent from the majority's reaching a waiver and estoppel issues because they were not preserved on appeal and, even if they were, the record supports the district court's rejection of the affirmative defenses.

The majority opinion has created a slippery judicial slope that erodes the protection of working people that was created by the legislature. The majority, in doing so, describes our precedent "that everyone is presumed to know the law" as a "time worn but often misused concept," and adopts new law relating to fiduciary obligation under the statute. In the process, the majority has shifted the burden to this employee of informing an employer of the employee's knowledge of the law. Now, an employee's knowledge of Minn.Stat. § 181.79 could relieve an employer from complying with this very statute at issue unless the employee informs the employer of his knowledge of the statute. This reasoning is contrary to the whole purpose of the statute: to prevent an employer from an unauthorized, unilateral action resulting in the deduction from wages due and owing an employee. Accordingly, I would affirm the court of appeals, which affirmed the district court.

The district court concluded that none of the defenses asserted by THM excused the wrongful deduction from Brekke's wage or affected his right to recover under the statute. The district court reasoned in its memorandum accompanying the findings of fact and conclusions of law as follows:

Plaintiff's position as an officer and director of the corporation does not

against THM to dispute it. Dr. Brekke's payment of the loan principal of $60,000 was documented by the deduction made on his pay voucher, and was confirmed by the elimination of the debt from THM's balance sheet. Dr. Brekke's opportunity to ask for the return of his promissory notes marked paid would have been the same, whether the loan was paid by an offset or by a simultaneous exchange of checks.

6. The Concurrence and Dissent suggests that "the majority has shifted the burden to this employee of informing an employer of the employee's knowledge of the law. Now an employee's knowledge of Minn.Stat. § 181.79 could relieve an employer from complying with this very statute at issue unless the employee informs the employer of his knowledge of the statute." This reads our holding too broadly. First, there is no doubt that the burden is on the THM to prove the factual elements of the affirmative defenses of waiver and equitable estoppel. We only conclude that the record contains evidentiary support for those elements, leaving it to the district court to make the factual determinations. Second, our conclusion that there is evidentiary support for the element of misrepresentation or concealment is not based merely on Dr. Brekke's status as an employee, or his silence about his knowledge of the law, but includes the facts that Dr. Brekke was also an officer and director, with fiduciary duties; Dr. Brekke had a specific contractual duty to disclose; and Dr. Brekke made an affirmative misrepresentation in the officer's certificate. The case, therefore, does not address the situation of an employee who has no fiduciary or contractual duties to disclose and who made no affirmative misrepresentation.

change his position as an employee pursuant to the employee agreement or defendant's obligations as an employer under the statute prohibiting deductions from wages without prior written consent. That which the statute is designed to protect against is exactly what occurred in this case. Plaintiff did not want the amounts of the notes deducted from his wages, plaintiff did not agree to such a deduction, and defendant, using the leverage which employers have, made the deduction anyway.

At trial defendant made a point of noting that plaintiff never informed defendant of his knowledge of the statute or his possible intention to seek the penalty. Nothing that this Court has seen suggests that an employee is under any obligation to do so or that failure to do so somehow becomes the equivalent of a written consent to the deduction. The fact that the statute contains a written consent requirement eliminates the ability of an employer to argue that somehow there is some kind of implied consent and that that excuses the statutory violation. Under the clear language of the statute, it does not.

The district court rejected THM's affirmative defenses, as did the court of appeals. *Brekke v. THM Biomedical, Inc.*, 667 N.W.2d 452, 456 (Minn.App.2003). The court of appeals specifically rejected the two equitable defenses of accord and satisfaction and estoppel. The court of appeals reasoned:

> Although Brekke testified that his attorney informed him about the penalty provision, Minn.Stat. § 181.79 the night before he cashed the check, he also testified that he did not intend to pursue the claim and that he filed a claim only after THM demanded the interest on the loans.

*Id.* at 456. I agree with the court of appeals.

THM sought further review of the court of appeals' decision from this court. The appellant petitioned for review of two issues from the court of appeals and they are as follows:

> (1) Must an officer, director, shareholder, and employee of a closely held corporation disclose material information to fellow officers and directors, namely a penal statute prohibiting certain offsets from "employee" wages under Minn. Stat. § 181.79? If so, does the fiduciary's breach of this duty preclude him from personally benefiting from his breach by collecting the statutory penalty as an "employee"?

> (2) Did the trial court abuse its discretion by failing to make any factual findings regarding respondent's fiduciary duties?

In their briefs, both parties employed the exact same language to frame the issues presented to this court. The first part of question one only presents a question of law that does not require any discussion of waiver or estoppel. The second part of question number one only raises a breach of fiduciary duty that also does not require a separate discussion of waiver and estoppel. Moreover, the fiduciary duty issues raised in the petition were not even pled as an affirmative defense in THM's amended answer. The second question solely relates to factual findings regarding the respondent's fiduciary duties. Waiver and estoppel issues are plainly missing from the petition for review to this court. The majority concedes that "[a]lthough the issues were not perfectly framed before the court of appeals or in the petition for further review, we conclude that these defenses are before us because the arguments before the court of appeals and in the petition for further review raise questions that have no relevance except to the defense of waiver and estoppel." It is true

that these defenses were raised at the court of appeals. However, they were simply not brought forth in the petition for review. The majority then concludes that the above two questions "have no relevance to the construction of the statute but are central to the application of the defenses of waiver and estoppel." However, the majority stretches and supplements the actual issues raised in the petition for review in order to reach the separate and distinct issues of waiver and estoppel. The questions raised in the petition for review relate to statutory construction and breach of fiduciary duty. Contrary to what the majority holds, waiver and estoppel have no relevance to and should not have been commingled with the two straightforward issues addressed by the parties. This argument ignores the clear statutory language and the findings of fact and conclusions of law issued by the district court, which are clearly supported by the record. Finally, this approach embarks upon an expansive view of what is required in the petition for review of a court of appeals' decision contrary to our precedent. "When submitting a petition for review, a party should bring issues ripe for review to the supreme court's attention with specificity, or waive the opportunity to have them reviewed." *Peterson v. BASF Corp.*, 675 N.W.2d 57, 67 (Minn. 2004); *see* Minn. R. Civ.App. P. 117, subd. 3(a). The waiver and estoppel issues the majority decides were simply not preserved as such on appeal and they should not be addressed.[1]

Importantly, the majority concedes that Brekke was an employee of THM, his accrued wages were earned and due, and THM made an unauthorized deduction of a debt running from the employee to the employer for wages due. It further contends that Brekke's unique position as an officer, director and shareholder of a closely held corporation imposed upon him a fiduciary duty, which required him to disclose his knowledge of the law contained in Minn.Stat. § 181.79. However, the legislature specifically enumerated only four exceptions to the unauthorized wage deduction law. *See* Minn.Stat. § 181.79. Therefore, the text of the statute demonstrates that the legislature considered the universe of exceptions to the wage deduction statute and, in its discretion, chose to refrain from creating additional exceptions similar to what THM proposes—an exception based on the employee's status as an officer, director or shareholder or, for those who failed to disclose their knowledge of this statute. We presume that the legislature's omission of additional exemptions was deliberate. *See Willmus v. Comm'r of Revenue*, 371 N.W.2d 210, 214 (Minn.1985) (stating that the court will not supply a statute with additional language where the legislature has intentionally omitted or inadvertently overlooked including such language). The majority acknowledges that waiver and estoppel are not exceptions to the statute but rather concludes that they are "common law defenses." The majority is basically creating an exception to the statute beyond what the statute expressly provides and beyond what was presented in THM's petition for review.

Although the $120,000 amount of the penalty is large in this case, the legislature chose not to limit or cap the amount of the penalty, but instead made it a multiple of the wrongfully held amount. In relative

---

1. The majority also overlooks the significant prejudice to Brekke resulting from addressing issues that were not properly raised by THM. By predicating its ruling on waiver and estoppel issues, neither of which were briefed by either party to this court, the majority stripped Brekke of the opportunity to advance counterarguments with respect to these issues either in his brief or at oral argument.

terms, the penalty is twice what was wrongfully withheld and amounts to only 1.08% of the $11,100,000 purchase price resulting from the sale of THM's assets.

In an attempt to avoid the clear statutory language, the majority discusses whether or not this statute "should be interpreted as superceding or abrogating common law defenses that would otherwise be available to preclude enforcement of the statutory remedy." The majority then cites to our *Stiff v. Associated Sewing Supply Co.*, 436 N.W.2d 777 (Minn.1989), decision. However, the holding in *Stiff* clearly does not apply to the present case. In *Stiff*, there was a specific finding that the wages or commissions from which a deduction had been taken, were not earned. *Stiff*, 436 N.W.2d at 780. In this case, wages are not in contention and it is undisputed that Brekke had a claim of unpaid wages amounting to $194,642.22. In *Stiff*, we concluded that "[i]n this case it is the earnings, themselves, which are in dispute. Respondent had the burden of proving the earnings to which he claimed to be entitled but failed to do so primarily because the relevant records did not exist substantially because of his participatory misconduct." *Id.* We then held that "the employer's statutory liability is limited to those wages or commissions 'actually earned and unpaid.' In this case respondent failed to establish the amount of the commissions earned and unpaid. The trial court found that Stiff had skimmed cash, appropriated the company's customers, and had participated in dismantling the company's business records. In those circumstances, he never earned his commissions during the years in question." *Id.* The majority is now effectively overruling *Stiff* by misreading its holding. The majority's conclusion that Minn.Stat. § 181.79 was not intended to supercede or abrogate the common law defenses of waiver and estoppel is not even mentioned in *Stiff* and

*Stiff* is a limited discussion of the "old forfeiture doctrine." *Id.*

The majority then concedes that "although THM did violate the statute by offsetting the loan against Dr. Brekke's wages, and that violation would have provided Dr. Brekke with the right to seek the statutory remedy, Dr. Brekke may have waived that right or be estopped from asserting it by conduct that is wholly separate from that on which the claimed indebtedness is based. Dr. Brekke may be estopped by conduct that is independent of the indebtedness and that makes enforcement of the penalty inequitable." The majority does not cite any authority in support of that proposition. Importantly, that proposition also ignores the conclusion that the district court made on the equitable defenses raised by THM. Specifically, the court concluded that there was not an accord and satisfaction between the parties and it further concluded that "none of the defenses asserted by defendant excuse the wrongful deduction from plaintiff's wages or affect plaintiff's right of recovery under the statute." The record supports this conclusion. The uncontradicted testimony of Brekke indicates that he was not going to make a claim under this statute until THM demanded interest in October of 2000.

The majority then asserts that "THM's claim of estoppel is based on Dr. Brekke's separate and independent breaches of contract and fiduciary duties. * * * Dr. Brekke may have waived that right or be estopped from asserting it by conduct that is wholly separate from that on which the claimed indebtedness is based." So, what is this conduct?

The only conduct in this record relates to Dr. Brekke's alleged knowledge of Minnesota law through Minn.Stat. § 181.79, which was not disclosed to THM. First of all, it must be remembered that it

has long been held that "[a]ll members of an ordered society are presumed either to know the law or, at least, to have acquainted themselves with those laws that are likely to affect their usual activities." *State v. King,* 257 N.W.2d 693, 697–98 (Minn.1977). This principle of law is not a "time worn" concept but is still part of our common law. Furthermore, during the entire period that THM was actively engaged in business, Minn.Stat. § 181.79 was part of Minnesota's law and THM was a sophisticated entity that ultimately sold its assets for over $11 million. Therefore, although the statute may contain material information, it is also reasonable to presume that THM either knew the law or, at least, would have acquainted themselves with the laws that are likely to affect their usual activities. As the district court found, "[t]hat which the statute is designed to protect against is exactly what occurred in this case." The district court further reasoned that "nothing that this [c]ourt has seen suggests that an employee is under any obligation to [inform THM of his knowledge of the statute] or that the failure to do so somehow becomes the equivalent of a written consent to the deduction." I agree with the district court and with the court of appeals.

On July 13, 2000, one of the principals of THM presented plaintiff with a pro forma check, including a deduction for their loan amount but not for the interest. On July 14, 2000, a net check was issued by THM to Brekke in the amount of $59,700.71. The deductions from this check included not only taxes but the $60,000 loan balance. At this point in time, on July 14, 2000, THM had already violated the statute and had indicated its intent to violate the statute since the July 11, 2000 board meeting where the decision to net out the loan was made. Brekke only learned about the statute himself after the wrongful conduct of THM, which was the night before he actually cashed the check. The majority does not discuss this timing and does not discuss the fact that members of an ordered society are presumed to either know the law or at least have acquainted themselves with the law in this instance. The majority has, in effect, shifted the burden of explaining what the legal requirements are to run a business on the employee who has already suffered from the illegal actions of the employer's wrongful deduction.

The conduct of THM is also put into dispute beyond the statutory violation. In October of 2000, THM indicated to Brekke that it would seek interest on the note. (THM ultimately demanded $42,506.76 in interest). However, by that time, the sale to Kensey Nash of all of its assets had occurred. The sale included all receivables, such as the $42,506.76 of interest, which was not disclosed as a receivable of THM in the asset purchase agreement of September 1, 2000 or in the accompanying financial statements of December 31, 1999, June 30, 2000, and the certificate of representation of warranties or in any of the closing documents. The Bill of Sale simply sold all of the assets of THM. As the district court found, this interest receivable was also sold to Kensey Nash and Kensey owns the right to pursue any remaining liability of Brekke on the notes. Yet, Brekke testified that it was THM's wrongful assertion of this claim that triggered his claim for the penalty pursuant to Minn.Stat. § 181.79. "[I]t is a maxim of equity that 'he who seeks equity must do equity, and he who comes into equity must come with clean hands.'" *Gully v. Gully,* 599 N.W.2d 814, 825 (Minn.1999). This case should end here with an affirmance.

PAGE, Justice (concurring in part, dissenting in part).

I join in the concurrence and dissent of Justice Gilbert.

ANDERSON, RUSSELL A., Justice (concurring in part, dissenting in part).

I join in the concurrence and dissent of Justice Gilbert.