STATE OF MINNESOTA

IN SUPREME COURT

A14-1159

Court of Appeals

Hudson, J.
Took no part, Chutich, McKeig, J.J.

Toyota-Lift of Minnesota, Inc.,

Appellant,

vs.                                                                  Filed:  September 28, 2016
                                                                     Office of Appellate Courts

American Warehouse Systems, LLC, et al.,

Respondents,

vs.

Les Nielsen,

Appellant.

_____

Paul W. Chamberlain, Ryan R. Kuhlmann, Chamberlain Law Firm, Wayzata, Minnesota, for appellant.

Ryan R. Dreyer, Jeffrey R. Underhill, Morrison Sund PLLC, Minnetonka, Minnesota, for respondents.
_____

S Y L L A B U S

When a court determines whether an employer is liable to an employee for the

statutory penalty for nonpayment of wages under Minn. Stat. § 181.14 (2014), the plain

language of the statute does not allow a court to consider offsetting liabilities owed by the employee to the employer.

Affirmed.

O P I N I O N

HUDSON, Justice.

We are presented here with a claim that commissions earned under an employment agreement are governed by statutory penalty provisions and those penalties may not be offset against other damages. Stated otherwise: May an "offsetting liability" owed to the employer be considered when determining whether an employee "recovers" a greater sum of wages than the employer tendered in good faith, for the purpose of deciding whether a penalty may be imposed on the employer under Minn. Stat. § 181.14 (2014)? The court of appeals held that no offset was permissible. We affirm the court of appeals.

Toyota-Lift of Minnesota, Inc. (TLM) commenced this lawsuit on April 30, 2012. The suit sought damages from American Warehouse Systems, LLC (AWS) and Mark Juelich (Juelich) on theories of breach of contract, conversion, and unjust enrichment. The suit arose out of the Asset Purchase Agreement (APA) entered into among AWS, TLM, and Les Nielsen (Nielsen), the founder and president of TLM. AWS and Juelich counterclaimed and brought a third-party complaint against Nielsen for claims related to the APA. Juelich and Steven Thoemke (Thoemke), former employees of TLM, claimed that TLM failed to pay them commissions they earned under their employment agreements with TLM and sought penalties under Minn. Stat. § 181.14.

2

The district court found that TLM owed additional commissions to Juelich and Thoemke totaling approximately $191,000,[1] which it later reduced to approximately $104,000 in a post-trial motion. The district court also found, however, that TLM was entitled to recover approximately $815,000 from AWS, due to AWS' breach of the APA and its unjust retention of customer payments owed to TLM. The district court denied the request of Juelich and Thoemke for penalties under section 181.14, reasoning that the $815,000 judgment owed to TLM from AWS more than offset the unpaid commissions owed to Juelich and Thoemke under Minn. Stat. § 181.14.

In a published opinion, the court of appeals reversed and determined that TLM was liable for statutory penalties under Minn. Stat. § 181.14. The court of appeals reasoned that the purpose of the penalties statute is to protect employees from employers who improperly withhold wages and commissions. The court of appeals framed the issue, which it recognized as one of first impression, as "whether the statutory phrase 'recovers a greater sum than the amount [] tendered [in good faith]' can incorporate judgment amounts resulting from claims that are unrelated to the disputed wages or commissions." *Toyota-Lift of Minn., Inc. v. Am. Warehouse Sys., LLC.*, 868 N.W.2d 689, 701 (Minn. App. 2015). The court of appeals answered that question in the negative and interpreted section 181.14 as forbidding consideration of any offsetting liabilities in determining what an employee "recovers" from the employer. *Id.* at 702. We granted review limited to that question.

---

[1] The district court order awarded $92,973.74 to Juelich and $98,015.86 to Thoemke, but appears to have totaled those awards in certain parts of the order to $180,989.60. The correct total amount appears to be $190,989.60.

I.

Les Nielsen is the founder and president of TLM, a North Dakota corporation. TLM's allied-products division inventoried and sold products such as warehouse racking, industrial shelving, and mezzanine systems used in warehouses (so-called "allied products"). Juelich and Thoemke began working for TLM in November 2003. While working for TLM, Juelich created the brand name "American Warehouse Systems." As a manager at TLM, Juelich was compensated in part by salary and in part by commission on his sales of allied products. Thoemke's compensation as an employee was solely based on commission. In 2009, Nielsen established a commission schedule for Juelich and Thoemke that compensated them at a commission rate of 30%, subject to the following possible adjustments. If at the end of the fiscal year, the net profitability of the allied-products division was at least 2% of its gross sales, Juelich and Thoemke would each receive a 40% rate of commission. Further, if at the end of the fiscal year, the net profitability of the allied-products division was at least 3% of its gross sales, then Juelich and Thoemke would each receive a 50% rate of commission.

After TLM's 2009 fiscal year ended, a preliminary profit-and-loss report showed a net operating profit of 5% for the allied-products division. In July or August 2010, however, Nielsen indicated that Juelich and Thoemke would not receive any additional 2009 commissions because the preliminary profit-and-loss statement did not reflect several year-end adjustments. The final profit-and-loss statement, published in November 2010, showed the allied-products division having a net operating profit of only 1.5%.

4

On April 1, 2011, Juelich and Nielson finalized an asset purchase agreement in which a new entity, AWS, would purchase the assets of TLM's allied-products division. Juelich and Nielson agreed that if either party received a payment that should have been directed to the other party after the closing, the receiving party would forward such payment to the other as soon as possible. The parties also agreed that any amount owed by one party could be offset by amounts owed by the other party.

In April 2012, TLM filed a complaint against AWS and Juelich. The complaint alleged breach of contract, conversion, and unjust enrichment, all on the theory that AWS retained payments that should have been remitted to TLM. AWS and Juelich denied the allegations, maintaining that they acted within the scope of their rights under the APA. AWS and Juelich made several counterclaims, including breach of contract, a request for an accounting of 2009 commission payments, and requests for injunctive relief. At the root of their claims for commissions was the theory that an accurate 2009 profit-and-loss statement would have showed they were entitled to receive commissions at a higher rate. Thoemke and EMESCO, LLC (the entity wholly owned by Juelich and Thoemke through which they hold their interest in AWS) later joined the litigation.

Following a bench trial and post-trial motions, the district court entered judgment in favor of TLM on its breach of contract claims in the amount of $815,000. The district court also entered judgment in favor of Juelich, Thoemke, and EMESCO on their unpaid commission claims in the amount of approximately $191,000, later reduced in a post-trial motion. The district court denied the claim for statutory penalties for the late payment of commissions under Minn. Stat. § 181.14. The court of appeals affirmed, except as to the

5

statutory penalties owed for late payment of commissions. *Toyota-Lift*, 868 N.W.2d at 702. On that issue, it reversed and remanded for further proceedings. *Id.* We granted TLM's petition for review with respect to the proper interpretation of the wage penalty provision in Minn. Stat. §181.14.

II.

This case requires us to interpret Minn. Stat. § 181.14. Statutory interpretation is a question of law that we review de novo. *Caldas v. Affordable Granite & Stone, Inc.*, 820 N.W.2d 826, 836 (Minn. 2012) (citing *Engquist v. Loyas*, 803 N.W.2d 400, 403 (Minn. 2011)). The goal of all statutory interpretation is to "ascertain and effectuate the intention of the legislature." Minn. Stat. § 645.16 (2014). If the language of a statute is clear and free from ambiguity, the court's role is to apply the language of the statute and not explore the spirit or purpose of the law. *Id*. A statute is unambiguous if it is susceptible to only one reasonable interpretation. *Marks v. Comm'r of Revenue*, 875 N.W.2d 321, 324 (Minn. 2016).

A.

Under Minn. Stat. § 181.14, subd. 1, an employer is required to pay wages or commissions "earned and unpaid at the time the employee quits or resigns." The statute specifies when such wages or commissions shall be paid, *id.*, and further states that if they are not paid within the required time they "shall become immediately payable upon the demand of the employee." *Id.*, subd. 2. Then,

> [i]f the employee's earned wages or commissions are not paid within 24 hours after the demand, the employer shall be liable to the employee for a penalty equal to the amount of the employee's average daily earnings at the

employee's regular rate of pay or the rate required by law, whichever rate is greater, for every day, not exceeding 15 days in all, until such payment or other settlement satisfactory to the employee is made.

*Id.* But the statute provides a so-called "safe harbor" in the event that the amount due is disputed:

> If the employer disputes the amount of wages or commissions claimed by the employee under the provisions of [section 181.14] or section 181.13, and the employer makes a legal tender of the amount which the employer in good faith claims to be due, the employer shall not be liable for any sum greater than the amount so tendered and interest thereon at the legal rate, *unless, in an action brought in a court having jurisdiction, the employee recovers a greater sum than the amount so tendered with interest thereon*; and if, in the suit, the employee fails to recover a greater sum than that so tendered, with interest, the employee shall not pay the cost of the suit, otherwise the cost shall be paid by the employer.

*Id.*, subd. 3 (emphasis added).

This "safe harbor" provision precludes the imposition of penalties when the employer "tenders a good faith portion of the amounts due and owing and the employee does not recover a greater sum." *Cousineau v. Norstan, Inc.*, 322 F.3d 493, 499 (8th Cir. 2003). Stated otherwise, the employer escapes liability for penalties only if the employee "recovers" less than the amount tendered by the employer.

B.

The court of appeals observed that "Minn. Stat. § 181.14 does not define the phrase [recovers a greater sum than the amount tendered in good faith] or explain how to calculate the sum recovered." *Toyota-Lift*, 868 N.W.2d at 701. The court of appeals determined that no Minnesota cases have "clarified this interpretive issue" and as a result, deemed the statute "ambiguous as to whether the calculation of the sum recovered can include amounts

7

recovered or owed on claims unrelated to unpaid wages or commissions." *Id.* The court eventually concluded that in determining whether penalties are available, "a court should compare only (1) the amount the employer tendered in good faith, and (2) the amount of wages and commissions the court found that an employee was actually due pursuant to a claim under Minn. Stat. § 181.14, subd. 1. If the amount due is greater than the amount tendered, then the employer remains liable for penalties under Minn. Stat. § 181.14, subd. 2." *Toyota-Lift*, 868 N.W.2d at 702. Although we agree with the court of appeals' holding and disposition, we disagree with the court's reasoning because, when the relevant provisions are read in context, their meaning is plain.

In interpreting a statute, "we are to construe words and phrases according to their plain and ordinary meaning." *Am. Family Ins. Grp. v. Schroedl*, 616 N.W.2d 273, 277 (Minn. 2000). In addition, we must "read and construe a statute as a whole and . . . interpret each section in light of the surrounding sections to avoid conflicting interpretations." *Id.* Section 181.14 is part of the Payment of Wages Act, a statute that addresses disputes regarding the payment of wages, not other disputes between employers and employees. Subdivision 2 provides a cause of action for employees whose earned wages or commissions are not paid within 24 hours after a demand is made. Under the statute, the employer is "liable to the employee for a penalty." Minn. Stat. § 181.14, subd. 2. The defense provided to an employer who disputes the amount of wages or commissions owed to an employee is set forth in subdivision 3. The employer can make a "legal tender of the

8

amount which the employer in good faith claims to be due." Minn. Stat. § 181.14, subd. 3.[2]

The employer is not liable for "any sum greater than the amount so tendered" unless the employee, after litigation on the wage-claim issue, recovers more money than the good-faith tender by the employer.[3] *Id.*

---

[2] The statute does not define a "legal tender." In its arguments to this court, TLM appears to assume that a legal tender under the statute is an unconditional cash payment. Certain portions of the court of appeals' opinion can be interpreted as supporting that interpretation. *See Toyota-Lift*, 868 N.W.2d at 700 (equating amounts "tendered" with amounts "paid" by stating that "subdivision 3 exempts employers from penalties incurred during an ongoing good-faith dispute over the amount of wages or commissions due, but *only if* the court finds that the employer *does not* owe additional wages or commissions beyond those the employer paid in good faith"). But it is not entirely clear that a "tender" under subdivision 3 is the same thing as a "payment." The American Heritage Dictionary defines "tender" in part to mean "[a] formal offer, as:  a. An offer of money or service in payment of an obligation." *The American Heritage Dictionary of the English Language* 1782 (4th ed. 2000). Similarly, Black's Law Dictionary defines "tender" in part to mean "[a] valid and sufficient *offer* of performance; specif., an unconditional *offer* of money or performance to satisfy a debt or obligation." *Tender*, *Black's Law Dictionary* (10th ed. 2014) (emphases added). Furthermore, subdivision 3 appears under the heading "Settlement of disputes." Together, these factors suggest that a settlement offer might be considered a "tender," regardless of whether the settlement offer is accepted. But respondents in their brief neither raised this argument, nor disputed TLM's implicit interpretation of "tender" in subdivision 3. And we need not decide the question in order to resolve the issue on which we granted review—namely, whether offsetting liabilities should be taken into account in determining what an employee "recovers," as that term is used in subdivision 3. Accordingly, we express no opinion on the subject.

[3] For the first time at oral argument, TLM argued that Minn. Stat. § 181.14, subd. 3 should be interpreted as extinguishing liability for penalties whenever the employer makes a good-faith tender of the amount it claims to be due, regardless of whether the employee eventually recovers more than the tender. Because TLM did not present this argument in its brief, we decline to address it now. *See State v. Grecinger*, 569 N.W.2d 189, 193 n.8 (Minn. 1997) ("[I]ssues not argued in briefs are deemed waived on appeal.") (citing *Balder v. Haley*, 399 N.W.2d 77, 80 (Minn. 1987)).

In order to interpret subdivision 3 in context, we read the statutory text, "in an action brought in a court having jurisdiction, the employee recovers a greater sum than the amount so tendered with interest thereon," *see id.*, to refer to a recovery resulting from *the cause of action arising out of a wage claim dispute*. Because the statute uses the phrase "the employee recovers a greater sum" together with "an action brought in a court having jurisdiction," and because such an action is brought under the Payment of Wages Act, we conclude that the "recover[y]" the statute references is the employee's recovery on the wage claim.

TLM essentially argues that it would be unjust to prohibit an employer from offsetting liabilities owed to it by the employee. But the statute is silent as to whether a court can offset an employer's liabilities under Minn. Stat. § 181.14, subd. 3. "[W]hen a statute is 'completely silent on a contested issue,' we do not look beyond the statutory text to discern its meaning unless there is an 'ambiguity of expression'—rather than a 'failure of expression.' " *State Farm Mut. Auto. Ins. Co. v. Lennartson*, 872 N.W.2d 524, 532 (Minn. 2015) (quoting *Rohmiller v. Hart*, 811 N.W.2d 585, 590 (Minn. 2012)). That is, "we look beyond the statutory text *only* if its 'silence renders the statute susceptible to more than one reasonable interpretation.' " *Id.* (quoting *Rohmiller*, 811 N.W.2d at 590). In this case, the statute's silence on whether an employee's "recover[y] [of] a greater sum" is subject to offset for non-wage claims, when read in context, does not lead to ambiguity. "We 'cannot supply that which the legislature purposely omits or inadvertently overlooks.' " *Id.* (quoting *Rohmiller*, 811 N.W.2d at 591). Because we cannot supply the

10

language that would give district courts the authority to offset liabilities, we hold that offsetting liabilities is not permitted.[4]

Affirmed.

CHUTICH, J., not having been a member of this court at the time of submission, took no part in the consideration or decision of this case.

MCKEIG, J., not having been a member of this court at the time of submission, took no part in the consideration or decision of this case.

---

[4] TLM relies heavily on *Brekke v. THM Biomedical, Inc.*, 683 N.W.2d 771 (Minn. 2004), and *Stiff v. Associated Sewing Supply Co.*, 436 N.W.2d 777 (Minn. 1989), for the proposition that equitable principles provide a defense to penalties under section 181.14. But our grant of review in this case was limited to a determination of the meaning of section 181.14 and the amount Juelich and Thoemke "recovered" under it, not whether principles of equity forbade the imposition of penalties—an issue that was also not addressed by the court of appeals.