Leslie Ingram MILLER, Plaintiff,

v.

STIFEL, NICOLAUS & COMPANY, INC., Defendant.

Civ. No. 10–1258 (JJK).

United States District Court, D. Minnesota.

Sept. 20, 2011.

Leslie Ingram Miller, Edina, MN, pro se.

Angela Beranek Brandt, Caryn A. Boisen, Larson King, LLP, St. Paul, MN, Josef S. Glynias, Kate M. Heideman, Robert J. Tomaso, Husch Blackwell Sanders LLP, St. Louis, MO, for Defendant.

## MEMORANDUM OPINION AND ORDER

JEFFREY J. KEYES, United States Magistrate Judge.

### INTRODUCTION

Plaintiff Leslie Ingram Miller sued Defendant Stifel Financial Corp./Stifel, Nicolaus & Co., Inc. ("Stifel"), on various claims arising out of the 2008 termination of her employment from Stifel. She claims that Stifel violated the Sarbanes–Oxley Act ("SOX") and the Minnesota Whistleblower Act ("MWA") by discharging her in retaliation for her complaints regarding other Stifel employees. She also alleges that Stifel failed to pay her commissions in violation of the Minnesota Payment of Wages Act ("MPWA").

Stifel counters that Plaintiff's whistleblowing retaliation claims under SOX and the MWA should be dismissed because:

(1) Plaintiff did not engage in protected activity under SOX or the MWA; (2) there is no causal connection between her complaints and the August 2008 termination; and (3) Stifel had a legitimate business reason for discharging Plaintiff and would have taken the same action even in the absence of Plaintiff's reports. Notably, Stifel argues that the August 8, 2008 termination is the only adverse employment action at issue in this lawsuit and that the remaining retaliation claims should be disregarded as time-barred. Further, Stifel argues that Plaintiff's MPWA claim is meritless because: (1) Plaintiff presented no evidence that Stifel failed to remit any bonus payment or commissions owed to her; (2) Plaintiff admitted that she received all of the compensation that she was owed from her employment; and (3) Plaintiff admitted that she did not make a demand for payment.

## BACKGROUND

### Plaintiff's Employment With Stifel in Edina, Minnesota

In October 2002, Stifel hired Plaintiff as an Investment Executive/Financial Advisor in its Edina, Minnesota branch office, where she worked from October 2002 until June 2006, when she transferred to Stifel's St. Paul branch office. (Doc. No. 69, Aff. of Kate M. Heideman ("Heideman Aff.") ¶ 2, Ex. A ¶¶ 4, 6.) As an Investment Executive/Financial Advisor, Plaintiff managed and invested her clients' financial assets with the goal of protecting and growing their financial wealth. (Id. at Ex. A ¶ 5.) While at the Edina branch, Plaintiff was supervised by the Branch Manager, Jim Sher. (Id. ¶ 7.)

In the spring of 2003, Plaintiff speculated that one of her co-workers, T.S., was using and selling marijuana after she saw

him talking with what Plaintiff described as "undesirables" and "degenerate-looking" people. (Heideman Aff. ¶ 3, Ex. B at 17–18, 22, 27, 51; ¶ 4, Ex. C ¶ 10).[1] Plaintiff admitted that she never actually saw T.S. using or selling marijuana, but only assumed that he was doing so based on his appearance and association with "undesirables." (Id. ¶ 3 at Ex. B. at 27.) She also admitted that she did not know whether Stifel's investment clients were (or were at risk of being) defrauded by T.S.'s alleged marijuana use. (Id. at 51.)

In the summer of 2003, Plaintiff reported that T.S. was using Stifel's photocopier for his personal printing and to allegedly run a side business. (Id. ¶ 2, Ex. B at 56–58, 59; ¶ 4, Ex. C ¶¶ 11, 12; ¶ 5, Ex. D at 6 of 10.) Plaintiff admitted that she does not know whether using a company printer for non-business purposes violates any rule or regulation of the Financial Industry Regulatory Authority ("FINRA"). (See id. ¶ 3, Ex. B at 83, 85, 101.) In 2003, Plaintiff also reported that T.S. allegedly accessed an off-limits area in the Edina branch office. (Id. at 96; ¶ 4, Ex. C ¶ 12; ¶ 5, Ex. D at 7 of 10.) Plaintiff admitted that she does not know whether accessing an off-limits area violates any rule or regulation of FINRA. (Id. ¶ 3, Ex. B at 100–01). In December 2005, Plaintiff reported that she believed two brokers had engaged in sexual activities at the Edina branch office. (Id. ¶ 2, Ex. A ¶ 10; Ex. B at 116–119; Ex. C ¶ 17; Ex. D at 7 of 10.)

### Plaintiff's Employment With Stifel in St. Paul, Minnesota

In June 2006, Plaintiff requested a transfer to Stifel's branch office in St. Paul, Minnesota. (Heideman Aff. ¶ 2, Ex. A ¶ 13; ¶ 3, Ex. B at 138–39.) Stifel granted Plaintiff's request. (Id., Ex. A

1. Stifel has withheld the full name of T.S. from this document to preserve the privacy interests of this individual who is not a party to this litigation.

¶ 14; Ex. B at 138–139.) The Branch Manager, David Upin, supervised Plaintiff during her employment in St. Paul. (*Id.* at Ex. A ¶ 15; Ex. B at 138; ¶ 4, Ex. C ¶ 18.) On August 30, 2006, Plaintiff told Stifel's President, Scott McCuaig, that Mr. Upin was "one of the finest managers I have seen in my career … [y]ou should send the rest to train with him." (Heideman Aff., ¶ 6, Ex. E.) And on February 7, 2007, Plaintiff praised Stifel's Chief Executive Officer, Chief Financial Officer, and President for their "wonderful thoughtfulness" and praised each of them for "making a great company." (*Id.* ¶ 10, Ex. I.)

In late 2007, however, Plaintiff complained that Mr. Upin asked one of Stifel's assistants to fix the personal computers of his friends and family members. (Heideman Aff. ¶ 3, Ex. B at 229–30, 231; ¶ 5, Ex. D at 9 of 10.) Plaintiff admitted that she does not know whether asking an assistant to help friends or family violates any rule or regulation of FINRA. (*Id.* ¶ 3, Ex. B at 230.) Then, in November 2007, Plaintiff reported that she believed Mr. Upin spent too much time away from the St. Paul branch office. (*Id.* ¶ 3, Ex. B at 147–48,160; ¶ 4, Ex. C ¶ 18; ¶ 5, Ex. D at 8 of 10.) In December 2007, Plaintiff speculated that the St. Paul office had not paid a postage bill, resulting in several documents not being delivered to her. (*Id.* ¶ 3, Ex. B. at 222–24; ¶ 5, Ex. D at 9 of 10.) And on January 3, 2008, Plaintiff alleged that boxes of files at the St. Paul office were not properly secured. (*Id.* ¶ 3, Ex. B at 190, 196–97; ¶ 4, Ex. C ¶ 19; ¶ 5, Ex. D at 9 of 10; and Ex. F.)

**Plaintiff's Employment With Stifel In Minneapolis, Minnesota**

In September 2007, Stifel informed employees in the St. Paul branch office that its current lease would be ending and that it was negotiating a new lease on the 26th floor of another office building. (Heideman Aff., ¶ 2, Ex. A ¶ 16; ¶ 8, Ex. G.) At that time, Plaintiff requested to be transferred to another branch office. (*Id.* ¶ 17, Ex. H.) Stifel granted Plaintiff's request, and she was transferred to Stifel's Minneapolis branch office on January 11, 2008. (*Id.* ¶ 2, Ex. A ¶ 18.) While employed in Minneapolis, Plaintiff was supervised by the Branch Manager, Matthew Kyler. (*Id.* ¶ 19; Ex. H.) Plaintiff did not make any complaints to Stifel during her employment in Minneapolis. (*Id.* ¶ 3, Ex. B at 218.)

**Plaintiff's Productivity Issues and Customer Complaint**

On April 21, 2003, while at the Edina branch, Plaintiff received a written warning because she did not meet Stifel's minimum production requirements during the first six months of her employment. (*Id.* ¶ 11, Ex. J.) And in January 2005, Plaintiff received a second warning after she failed to meet Stifel's minimum production requirements during the 2004 calendar year. (*Id.* ¶ 12, Ex. K.) Later, in the summer of 2008, Plaintiff was still averaging below Stifel's minimum production expectations. (*Id.* ¶ 13, Ex. L.)

During her employment, Plaintiff's largest and most profitable accounts were owned by or related to Roslye Ultan (the "Ultan Accounts"). (*Id.* ¶ 2, Ex. A ¶ 20.) Beginning in October 2004, Plaintiff's commissions from Stifel became her exclusive source of income. (*Id.* ¶ 22.) From 2005 to the end of 2007, the Ultan Accounts accounted for more than 50% of Plaintiff's total commissions. (*Id.* ¶ 21.) In May 2008, Ms. Ultan removed all of her accounts from Stifel. (Heideman Aff. ¶ 14, Ex. M.) The loss of the Ultan Accounts exacerbated Plaintiff's ongoing productivity issues. (Heideman Aff. ¶ 3, Ex. A. ¶ 26.) Also in May 2008, Ms. Ultan submitted a written complaint alleging that Plaintiff had engaged in overly aggressive trading in her accounts, resulting in losses

of more than $300,000. (Heideman Aff. ¶ 15, Ex. N.) After receiving Ms. Ultan's complaint, Stifel investigated her allegations. (*Id.* ¶ 2, Ex. A.¶ 24.)

## Plaintiff's Discharge from Stifel

Based on its investigation, Stifel determined Ms. Miller's trading activities, including in the Ultan Accounts, were inconsistent with Stifel's policies and practices. (*Id.* ¶ 25; *see also* Heideman Aff., ¶ 16, Ex. O.) On August 8, 2008, Stifel terminated Plaintiff's employment. (*Id.* ¶ 27; Doc. No. 1, Compl. ¶ 21.) Plaintiff has admitted that Stifel paid all of the bonus and commission payments that she was owed. (Heideman Aff. ¶ 17, Ex. P ¶¶ 8–9.) Plaintiff has also admitted that she did not make a written demand for payment of any allegedly unpaid compensation after her employment with Stifel ended. (*Id.* ¶¶ 10–12.)

## Plaintiff's Complaint to the United States Department of Labor

On November 6, 2008, Plaintiff filed a complaint with the United States Department of Labor ("DOL" or "OSHA"[2]) alleging that Stifel violated SOX by discharging her because of her complaints in 2003, 2005, and 2007.[3] (Heideman Aff. ¶ 5, Ex. D.) On June 5, 2009, OSHA dismissed Plaintiff's complaint and found that there was "no reasonable cause to believe that [Stifel] violated SOX...." (*Id.* ¶ 14, Ex. M.) It specifically found that Plaintiff did not engage in activity protected by SOX because her complaints "[did] not constitute reasonably perceived violations of 18 U.S.C. § 1341, § 1343, § 1344, § 1348; any rule or regulation of the Securities and Exchange Commission; or any provision of federal law relating to fraud against shareholders." (*Id.*)

## DISCUSSION

## I. Standard of Review

Summary judgment will be granted when the moving party demonstrates that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enter. Bank v. Magna Bank of Missouri*, 92 F.3d 743, 747 (8th Cir.1996). The nonmoving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir.1995). A party opposing a properly supported motion for summary judgment "may not rest upon mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Further, the nonmoving party may not rest upon her pleadings; rather, the nonmoving party's response "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). Showing that there is some metaphysical doubt as to the material facts is not enough; "the mere existence of a scintilla of evidence" in support of the nonmoving party is not sufficient to show a genuine issue of material fact. *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505. Rather, the nonmoving party must present significant probative evidence in support of her opposition to the motion for summary judgment to defeat the motion. *Id.* at 249–50, 106 S.Ct. 2505.

■ The Eighth Circuit recently clarified that "[t]here is no 'discrimination case exception' to the application of summary judgment, which is a useful pretrial tool to

2. The Secretary of Labor has delegated responsibility for receiving and investigating whistleblower complaints to OSHA, an agency within the Department of Labor. *See* 29 C.F.R. § 1980.103(c).

3. OSHA specifically found that as Plaintiff's "complaint was filed within 90 days of the alleged adverse action, it is deemed timely." (Heideman Aff. ¶ 16, Ex. O at 2 of 4.)

determine whether any case, including one alleging discrimination, merits a trial." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1043 (8th Cir.2011) (en banc) (citations omitted). "Although employment discrimination cases are 'often fact intensive and dependant on nuance in the workplace, they are not immune from summary judgment.'" *Trierweiler v. Wells Fargo Bank*, 639 F.3d 456, 459 (8th Cir.2011) (quoting *Fercello v. Ramsey Cnty.*, 612 F.3d 1069, 1077 (8th Cir.2010)). And, "[i]f there is no dispute of material fact and reasonable fact finders could not find in favor of the nonmoving party, summary judgment is appropriate." *Id.* (internal quotation marks omitted); *see also Smith v. Fairview Ridges Hosp.*, 625 F.3d 1076, 1082–83 (8th Cir.2010) ("[N]o separate summary judgment standard exists for discrimination or retaliation cases and . . . such cases are not immune from summary judgment.")

## II. Analysis

### A. Plaintiff's SOX Whistleblower Claim

■ Section 806 of SOX protects employees who provide information, which they "reasonably believe[ ] constitutes a violation of section 1341 [mail fraud], 1343 [wire fraud], 1344 [bank fraud], or 1348 [securities fraud], any rule or regulation of the Securities and Exchange Commission ["SEC"], or any provision of Federal law relating to fraud against shareholders . . ." 18 U.S.C. § 1514A(a)(1). An action under SOX is governed by the burdens of proof set forth in 49 U.S.C. § 42121(b). *See* 18 U.S.C. § 1514A(b)(2)(C). To establish a prima facie case, the plaintiff must show, by a preponderance of the evidence, that: (1) she engaged in protected activity; (2) the employer knew or suspected (actually or constructively) of the protected activity;

(3) she suffered an unfavorable personnel action; and (4) the protected activity was a contributing factor in the unfavorable personnel action. *Pearl v. DST Sys., Inc.*, No. 06–918, 2008 WL 8602367, *13 (W.D.Mo.2008). If she makes such prima facie showing, the defendant can still "avoid liability if it can demonstrate by clear and convincing evidence that it would have taken the same unfavorable personnel action in the absence of the protected activity." *Id.*

### (i) Plaintiff's Claims Pre–Dating August 8, 2008 are Time Barred.

■ A federal district court "can only conduct a 'de novo review' of those [SOX whistleblower] claims that have been administratively exhausted." *Willis v. Vie Fin. Grp.*, No. 04–435, 2004 WL 1774575, *6 (E.D.Pa. Aug. 6, 2004) (holding that plaintiff's failure to raise a claim in an administrative complaint with OSHA precluded pursuing that claim in district court); *see also Hanna v. WCI Cmts.*, 348 F.Supp.2d 1322, 1324, 1329 (S.D.Fl.2004) (under the "de novo review" provided by SOX, "district courts are able to consider the merits of a plaintiff's whistle-blower [administrative] complaint as if it had not been decided previously") (internal quotation omitted); *Murray v. TXU Corp.*, 279 F.Supp.2d 799, 802 (N.D.Tex.2003) (stating that district court lacks subject matter jurisdiction over Section 806 claim if plaintiff has failed to comply with administrative procedures).

■ The administrative complaint must be filed "[w]ithin 90 days after an alleged violation of the Act occurs" and include "a full statement of the acts and omissions, with pertinent dates, which are believed to constitute the violations." 18 U.S.C. § 1514A(b)(2)(D) (2009)[4]; 29 C.F.R.

---

4. At the time Plaintiff filed her SOX Complaint before OSHA—on November 6, 2008—

the statute allowed a party to seek relief if the

§ 1980.103(b) and § 1980.103(d). If the employee has met these requirements for a particular violation, and a final administrative decision has not issued within 180 days of the filing of the administrative complaint, the employee can proceed with an action in federal court based on that violation. 18 U.S.C. § 1514A(b)(1)(B). Defendant argues that because Plaintiff filed her administrative complaint on November 6, 2008, any event that took place before August 8, 2008 should be disregarded as time-barred because it occurred outside of the 90–day limitations period applicable to her SOX claims. (Doc. No. 68, Def.'s Mem. in Supp. of Summ. J. "Def.'s Mem." at 6 n. 4.). *See* 18 U.S.C. § 1514A(b)(2)(D) (2009) ("An action under paragraph (1) shall be commenced not later than 90 days after the date on which the violation occurs."). The Court agrees in part. As explained below, the Court concludes that Plaintiff cannot *recover* for any harm associated with these untimely allegations, but the Court may consider them as background information in support of her timely termination claim. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113–20, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002) (stating that the limitations period does not "bar an employee from using the prior [non-exhausted, discriminatory] acts as background evidence in support of a timely claim").

In her administrative complaint of discrimination, plaintiff identified her August 8, 2008 discharge as the only adverse employment action, and did not allege a hostile work environment. (Heideman Aff. ¶ 5, Ex. D at 4 of 10.) She did include, in the context of her reports of Stifel's alleged SEC violations, some earlier incidents of retaliation that allegedly took place in response to her 2003, 2005, and 2007 complaints to Stifel. (*Id.* at 5–10.) She also stated that she "was fired on Friday, August 8, 2008 . . . as a final retaliatory action after years of retaliation, intimidation, blacklisting and discriminating treatment after Leslie Miller reported violations of SEC rules and regulations. . . ." (*Id.* at 4 of 10.) The DOL's decision did not address any pre-August 2008 incidents of retaliation. (Heideman Aff. ¶ 18, Ex. Q.) And from its written opinion it appears that the DOL construed Plaintiff's complaint to be limited to her termination claim: "In brief, you alleged that Stifel, Nicolaus & Company, Incorporated (Respondent) terminated your employment in retaliation for your reports to management of various violations . . ." (*Id.* at 1 of 4.) Ultimately, the DOL dismissed Plaintiff's complaint because there was "no reasonable cause to believe that [Stifel] violated SOX . . ." by terminating Plaintiff's employment. (*Id.* at 1 of 4.)

The record is clear that aside from her August 8, 2008 termination, the remaining conduct that Plaintiff now alleges in this action occurred more than ninety days before her administrative complaint filed on November 6, 2008. Under SOX, each retaliatory adverse employment decision constitutes a separate act, and an employee may complain only of discrete acts that occurred within the applicable time period. *McClendon v. Hewlett–Packard Co.*, No. 05–87, 2005 WL 2847224, at *3 (D.Idaho Oct. 27, 2005) (applying to SOX claims the general principle under *Morgan*, 536 U.S. at 113, 122 S.Ct. 2061, that each discrete discriminatory employment act starts a new clock for the filing of an administrative claim). The only exception to this rule is an action based on a hostile work environment. *See Morgan*,

claim was filed no later than 90 days after the date of the violation. The current statute, effective since July 22, 2010, allows a claim to be filed no later than 180 days after the date on which the violation occurs. 18 U.S.C.A. § 1514A(b)(2)(D) (2010).

536 U.S. at 120, 122 S.Ct. 2061; *Jenkins v. Mabus,* 646 F.3d 1023, 1027 (8th Cir.2011) (citing *Morgan,* 536 U.S. at 120, 122 S.Ct. 2061); *Avlon v. Am. Expr. Co.,* No. 08–SOX–51, 2008 WL 7835783, at *10 (ALJ Sept. 8, 2008) ("It has been determined that 'each retaliatory adverse employment decision constitutes a separate act and that the plaintiff can only file a complaint to cover discrete acts that occurred within the applicable time period. The only exception to this rule is an action based on a hostile work environment'") (quoting *Dolan v. EMC Corp.,* No. 04–SOX–1, 2004 WL 5840270, at *2 (ALJ Mar. 24, 2004)).

In this action, Plaintiff anchors her claims in hostile work environment, alleging, among other things, that she "received increased scrutiny and a hostile work environment compared to brokers in the St. Paul, Minnesota, office who did not report illegal activities ..." (Compl. ¶ 20.) And she does not merely allege the pre-termination facts as background for her Complaint, but alleges these additional acts of retaliation within her SOX claim:

> Defendant discriminated and/or retaliated against Plaintiff by rescinding a bonus program she was a participant in, threatening her termination if she did not exceed productivity levels beyond those expected of a training broker, setting performance guidelines for Plaintiff that were unattainable given her experience and years of licensure, creating a hostile and harassing environment for Plaintiff, denying Plaintiff opportunities to take over accounts that other brokers were provided and terminating her.

(*Id.* ¶ 26.)

While Plaintiff submits no argument on the administrative exhaustion issue or the timeliness of her pre-August 2008 claims of retaliation, in light of her *pro se* status, this Court will construe Plaintiff's pleadings and submissions liberally, and interpret them to raise the claim that she was working in a hostile work environment before the allegedly retaliatory termination. Thus, before turning to the merits of her termination claim, the Court will consider whether the pre-August 2008 incidents can be revived by the hostile work environment exception under *Morgan* and its progeny.

The relevant inquiry is whether the alleged conduct that occurred more than 90 days before the filing of her administrative complaint—i.e. the rescission of Plaintiff's broker training program with Stifel, failure to remit a bonus payment, threat of termination, and the rescission of a disability accommodations—constitute "discrete acts" that are individually actionable, *or* are a series of related actions that may not be individually actionable but collectively or cumulatively can be said to amount to an unlawful employment practice. The former—discrete acts of retaliation such as a termination, failure to promote, denial of transfer, refusal to hire, wrongful suspension, wrongful discipline, and denial of training—must be raised within the applicable limitations period or they will not support a lawsuit. *Morgan,* 536 U.S. at 113, 122 S.Ct. 2061 ("[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges"); *Betz v. Chertoff,* 578 F.3d 929, 938 (8th Cir.2009) ("Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify. Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'") (quoting *Morgan,* 536 U.S. at 114, 122 S.Ct. 2061).

The Court concludes that all of the alleged pre-August 2008 incidents, and the termination itself, fall into the category of discrete acts. The alleged rescission of the broker training program, the alleged

non-payment of bonus or commissions, the alleged threat of termination, the alleged denial of assignment request, and the purported rescission of her disability accommodation each was a discrete adverse action that had an immediate and tangible effect on Plaintiff's income and employment. *See, e.g., Willis,* 2004 WL 1774575, at *4 (finding that allegation of termination could not be bootstrapped to the threat of termination claim); *Gorokhovsky v. New York,* No. 10–8848, 2011 WL 2019423, *5 (S.D.N.Y. May 19, 2011) (finding that consistent with *Morgan,* "[i]t is well settled that failures to promote, *discriminatory pay,* job transfers, and *unfavorable* assignments are discrete acts that cannot form the basis of a continuing violation claim) (emphasis added); *Rothstein v. Kemps, LLC,* No. 09–3387 (JMR/SRN), 2010 WL 1995397, at *6 (D.Minn. Apr. 30, 2010) ("This Court, the Eighth Circuit, and other courts have held that a denial of a request for accommodation constitutes a discrete act and is not part of a continuing violation"); *Davis v. Coca–Cola Bottling Co. Consol.,* 516 F.3d 955, 970 (11th Cir.2008) (finding that under *Morgan,* light work assignments "constituted discrete acts, not acts that were part of a hostile work environment"); *Grove v. EMC,* 06–SOX–99, 2007 WL 7135739, at *15 (ALJ July 2, 2007) (finding that the nonpayment of a commission on a deal, attempts to terminate employment, and the "alienation" from EMC when complainant's accounts were "dissolved" or reassigned all clearly constituted discrete adverse actions that were not actionable because they occurred more than ninety days before the OSHA complaint was filed); *Hinds v. Hillenbrand,* No. 06–SOX–72, 2007 WL 7135741, *4 (ALJ Oct. 10, 2007) (stating that discrete acts like failure to pay compensation or termination constitute separate actions that start the time clock for filing purposes); *McIntyre v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 2003–SOX– 23, 2004 WL 5032618, *9 (ALJ Jan. 16, 2004) (stating that termination, denial of benefits and other such claims were discrete acts that could not be bootstrapped to blacklisting claim).

Further, as the Supreme Court stated in *Morgan,* no hostile work environment claim is found where the timely-brought incidents "had no relation to the [earlier] acts" or if, "for some other reason, such as certain intervening action by the employer," the more recent act was "no longer part of the same hostile environment claim". *Morgan,* 536 U.S. at 118, 122 S.Ct. 2061. The Eighth Circuit recently echoed that principle in holding that only "acts before and after the limitations period [that are] *so similar in nature, frequency, and severity* ... must be considered to be part and parcel of the hostile work environment that constituted the unlawful employment practice that gave rise to th[e] action." *Wilkie v. Dep't of Health & Human Servs.,* 638 F.3d 944, 951 (8th Cir.2011) (*quoting Rowe v. Hussmann Corp.,* 381 F.3d 775, 781 (8th Cir.2004) (considering "whether the acts about which an employee complains are part of the same actionable hostile work environment practice, and if so, whether any act falls within the statutory time period.")). And, generally, to establish hostile work environment, the plaintiff must establish more than the occurrence of isolated or sporadic acts of intentional discrimination, but instead a persistent, on-going pattern. *Carpenter v. Con–Way Cent. Express, Inc.,* 481 F.3d 611, 618 (8th Cir.2007) ("Allegations of a few isolated or sporadic incidents will not suffice; rather, the plaintiff must demonstrate the alleged harassment was 'so intimidating, offensive, or hostile that it poisoned the work environment.'" *Id.* (quoting *Tuggle v. Mangan,* 348 F.3d 714, 720 (8th Cir.2003))).

■ Here, months, and indeed years, of intervening events separated Plaintiff's pre-August 2008 alleged incidents of discrimination and Plaintiff's termination. Further, it appears that the majority of the issues Plaintiff encountered stemmed from typical inter-office politics and personality conflicts rather than retaliation or hostile work environment. And while the alleged incidents, including performance-related criticisms, may have been frustrating for Plaintiff, the Court does not find that these alleged incidents, either alone or in combination, amount to an actionable hostile work environment claim that can survive summary judgment. *See Devin v. Schwan's Home Serv., Inc.,* 491 F.3d 778, 788 (8th Cir.2007) (holding that allegations that Plaintiff was denied a route assistant, was unfairly disciplined, paid less than the male workers, was not allowed to expense pay phone calls, and was required to make inventory changes on the computer, at best, amounted to a frustrating work environment rather than an objectively hostile work environment); *abrogated on other grounds by Torgerson,* 643 F.3d 1031, at 1042–43, 1058; *Bradley v. Widnall,* 232 F.3d 626 (8th Cir.2000) (finding that employee's "frustrating work situation" characterized by her being excluded from the decision-making process, treated with disrespect, subjected to false complaints, and curtailed in her supervisory duties did not amount to hostile work environment), *abrogated on other grounds by Torgerson,* 643 F.3d at 1042–43, 1058; *Breeding v. Arthur J. Gallagher & Co.,* 164 F.3d 1151, 1159 (8th Cir.1999) (concluding that unfair criticism and being yelled at did not amount to actionable harassment); *see also Martinelli v. Penn Miller Ins. Co.,* 269 Fed.Appx. 226, 228 (3d Cir.2008) (finding that employer's scrutiny of employee's work, "while unpleasant and annoying" did not amount to hostile work environment); *Harbuck v. Teets,* 152 Fed.Appx. 846, 847–48 (11th Cir.2005) (holding that employer's

conduct, including keeping workplace too cold, subjecting employee to heightened scrutiny, and disclosing information from Plaintiff's prior lawsuit to her co-workers, did not constitute a hostile work environment).

Here, based on the evidence in the record, including evidence submitted by Plaintiff herself, Plaintiff's work environment at Stifel was by all accounts polite and cordial. For example, Stifel consistently accommodated Plaintiff's transfer requests, and worked with Plaintiff to find the best office space to accommodate her fear of heights and inability to hear well on high floors. On several occasions, Plaintiff praised her supervisors and Stifel in general. For example, on August 30, 2006, she wrote to President McCuaig that she "just wanted to let [him] know what a top notch manager you have over here in St. Paul ... David Upin is one of the finest managers I have seen in my career ..." (Heideman Aff. ¶ 6, Ex. E.) And on January 7, 2008, Plaintiff, in an e-mail to President McCuaig, stated that "I feel it is the perfect fit for me with this manager [Matthew Kyler]. He is a very knowledgeable, experienced manager and a very kind individual and I feel that my business will prosper under his guidance and management style ..." (*Id.* ¶ 9, Ex. H.) Before that, in February 2007, Plaintiff expressed gratitude to President McCuaig and others "for their wonderful thoughtfulness ... in celebrating [her] birthday in such a fun way ... [and] making a great company!!!" (*Id.* ¶ 10, Ex. I.) In sum, Plaintiff was not subjected to hostile work environment just because Stifel did not always yield to her demands or resolve every office dispute in her favor.

Thus, the Court concludes that Plaintiff's pre-August 8, 2008 retaliation allegations are not actionable for the purposes of liability, but that the facts related to claims

now untimely may be still be considered as background to Plaintiff's timely termination claim. *See Morgan*, 536 U.S. at 113, 122 S.Ct. 2061. As set forth below, however, even with these facts as a background, Plaintiff cannot make out a *prima facie* case of discrimination under SOX or show that Defendant's purported reason for terminating Plaintiff was pretextual.

### (ii) Plaintiff Has Failed to Make Out a *Prima Facie* Case of a SOX Violation Against Stifel.

To assert a violation under SOX, Plaintiff must satisfy the *prima facie* elements of a whistleblower claim. This she cannot do. First, Plaintiff cannot demonstrate that she engaged in protected activity. Only activity "definitively and specifically relate[d] to one of the six enumerated categories of misconduct contained in SOX § 806, i.e. mail fraud, wire fraud, bank fraud, securities fraud, violation of an SEC rule or regulation, or violation of a federal law relating to fraud against shareholders" is protected by SOX. *Fraser v. Fiduciary Trust Int'l*, No. 04–6958, 2009 WL 2601389, at *5 (S.D.N.Y. Aug. 25, 2009) (internal quotations omitted); *Pearl*, 2008 WL 8602367, at *13 ("In assessing whether protected activity is involved, the Court must first analyze whether the complaints relate to one of the six enumerated categories in section 1514A, that is: (1) mail fraud—(18 U.S.C. § 1341); (2) wire fraud—(18 U.S.C. § 1343); (3) bank fraud—(18 U.S.C. § 1344); (4) securities fraud—(18 U.S.C. § 1348); (5) violations of any rule or regulation of the SEC; or (6) violations of any provision of federal law relating to fraud against shareholders."); *see also* 18 U.S.C. § 1514A(a)(1). Here, none of Plaintiff's alleged complaints to her employer can form a basis for a SOX claim. Plaintiff claims that she blew the whistle on potentially illegal activities at Stifel when she made the following complaints:

- T.S. allegedly used and sold marijuana.
- T.S. used Stifel's copy machine for his personal printing and to allegedly run a side business.
- T.S. accessed an off-limits area in the Edina branch office.
- Two brokers engaged in an affair at the Edina branch office.
- David Upin asked an assistant to help his family and friends with computer problems.
- Mr. Upin spent too much time traveling.
- The St. Paul office did not pay a postage bill, resulting in several documents not being delivered.
- Boxes of files at the St. Paul office were not properly secured.

None of these reports—even if true—implicates any of the six categories of activities protected by SOX: mail fraud, wire fraud, bank fraud, securities fraud, or any SEC regulation or federal law related to shareholder fraud. As stated by the Department of Labor Administrative Review Board, and reiterated by courts in this Circuit, there is "no authority for the contention that the failure to address personnel matters in a manner satisfactory to the complaining party constitutes a violation of SOX." *Pearl*, 2008 WL 8602367, at *16. For example, in *Harvey v. Home Depot U.S.A., Inc.*, ARB Case No. 04–114, ALJ Case No. 2004–SOX–20, 2006 WL 3246905, at *11 (ALJ June 2, 2006), the employee complained about racial and employment discrimination to the Board of Directors and corporate executives. *Id.* But the Department of Labor Administrative Review Board, "although recognizing that a company that tolerates discriminatory practices may not be acting in the best interests of its shareholders, concluded that allegations of employment discrimination

do not point to violations of the statutes concerning mail fraud, wire fraud, bank fraud, shareholder fraud or violations of SEC rules." *Id.* The Board noted that:

> Providing information to management about questionable personnel actions, racially discriminatory practices, executive decisions or corporate expenditures with which the employee disagrees, or even possible violations of other federal laws such as the Fair Labor Standards Act or Family Medical Leave Act, standing alone, is not protected conduct under the SOX. . . .

*Id.*

Further, Plaintiff's deposition testimony makes clear that the bulk of her complaints related to purported ethical lapses of Stifel employees, which Plaintiff deemed contrary to Stifel's internal ethical policies—i.e., engaging in office romances, using office equipment for personal reasons, asking an assistant to fix personal computers of the supervisor's family and friends, spending too much time on out-of-office travel, showing lack of enthusiasm in being a branch manager, meeting "undesirables" in the parking lot, and the like. But complaints about alleged violations of internal company policies are not protected activities under SOX. *Wiest v. Lynch*, No. 10–3288, 2011 WL 2923860, at *9 (E.D.Pa. July 21, 2011) (holding that "raising a complaint about a violation of an internal policy is not considered protected activity") (quoting *Marshall v. Northrup Gruman Synoptics*, ALJ No. 2005–SOX–0008, 2005 WL 4889013, at *3–4 (ALJ June 22, 2005)).

■ Indeed, there is no evidence that Plaintiff "actually believed the conduct complained of constituted a violation of pertinent law and that 'a reasonable person in [her] position would have believed that the conduct constituted a violation.'" *Welch v. Chao*, 536 F.3d 269, 278 n. 4 (4th Cir.2008) (quoting *Livingston v. Wyeth, Inc.*, 520 F.3d 344, 352 (4th Cir.2008)).

For example, she testified that she did not know whether using a company printer for non-business purposes violated any FINRA rule or regulation. (Heideman Aff. ¶ 2, Ex. B at 83, 85, 101.) Nor did she know whether accessing an off-limits area violates any FINRA rule or regulation. (*Id.* at 96, 100–01.) And, she did not know whether investment clients (i.e. "shareholders")—were defrauded or were at risk for being defrauded—by T.S.'s alleged marijuana abuse. (*Id.*) Finally, she admitted that she did not know whether asking an assistant to help friends or family violates any rule or regulation of FINRA. (*Id.* at 230.) Importantly, no reasonable person in Plaintiff's position would have believed that the activities listed in her Complaint constituted a violation under any law or regulation pertinent to SOX.

■ Finally, even assuming Plaintiff's activities were protected under SOX, she cannot demonstrate that these activities were a contributing factor in her termination—the last *prima facie* element. Although Plaintiff alleges that her reports from March 2003 to January 3, 2008, caused her discharge on August 8, 2008, without additional evidence, the eight-month gap between Plaintiff's last complaint and her discharge "is not sufficiently proximate to permit the inference that protected activity was a contributing factor to her termination." *Pardy v. Gray*, No. 07–6324, 2008 WL 2756331, at *6 (S.D.N.Y. July 15, 2008) (holding that a six-month gap between the protected activity and the employee's termination was insufficient to infer that the protected activity was a contributing factor); *Sussberg v. K–Mart Holding Corp.*, 463 F.Supp.2d 704, 713–14 (E.D.Mich.2006) (granting summary judgment to the defendant where there was at least a five-month gap between protected activity and termination, and there was

evidence of performance problems and inability to get along with co-workers).

The lack of causal connection between Plaintiff's complaints and termination is bolstered by Plaintiff's on-going performance issues and the intervening events of May 2008—i.e., Plaintiff's most profitable customer removed all her accounts from Stifel and submitted a written complaint alleging that Plaintiff had engaged in aggressive trading that caused losses of more than $300,000. There is no competing evidence—aside from Plaintiff's personal views—that Stifel was incorrect in its assessment of her lagging performance. And even if Stifel misjudged her performance, "[f]ederal courts do not sit as a super-personnel department that reexamines an entity's business decisions." *Johnson v. Stein Mart, Inc.*, No. 10–13434, 440 Fed.Appx. 795, 801–02, 2011 WL 3962819, at *5 (11th Cir. Sept. 9, 2011) (affirming summary judgment of Plaintiff's SOX claim) (internal quotation marks and citations omitted); *see also Macias Soto v. Core–Mark Int'l Inc.*, 521 F.3d 837, 842 (8th Cir.2008) (stating that the relevant inquiry "is not whether the stated basis for termination actually occurred, but whether the defendant *believed* it to have occurred"). In sum, examining the evidence in the light most favorable to Plaintiff, no reasonable jury could find that her alleged protected activity that took place months, or more commonly years, earlier was a contributing factor in her termination.

### (iii) Defendant Proffered a Legitimate Business Reason for Discharging Plaintiff

Because Plaintiff has failed to establish a prima facie causal connection, the Court need not examine whether Stifel can show by clear and convincing evidence that it would have terminated Plaintiff even if it did not know of her complaints. Nonetheless, the Court notes that, for many of the same reasons discussed above, Stifel demonstrated that it had a legitimate business reason for terminating Plaintiff, and Plaintiff presented no competent evidence to show that its reason was pretextual.

### B. Plaintiff's Minnesota Whistleblower Act Claim

The MWA prohibits employers from taking an adverse employment action against an employee who, "in good faith, reports a violation or suspected violation of any federal or state law or rule adopted pursuant to law to an employer...." Minn.Stat. § 181.932, subd. 1(1). Claims under the MWA are analyzed under the *McDonnell Douglas* burden-shifting test. *Cokley v. City of Otsego*, 623 N.W.2d 625, 630 (Minn.Ct.App.2001); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Phipps v. Clark Oil & Refining Corp.*, 408 N.W.2d 569, 572 (Minn.1987) (explaining the burdens of proof). The employee must first establish a prima facie case of retaliatory discharge under Minn.Stat. § 181.932, subd. (1)(a), by showing: (1) statutorily protected conduct; (2) an adverse employment action; and (3) a causal nexus between the two. *Cokley*, 623 N.W.2d at 630. If the employee succeeds, the burden of production shifts to the employer to articulate a legitimate, nonretaliatory reason for its action. *Id.* If the employer meets its burden of production, the employee must demonstrate that the employer's articulated justification is pretextual. *Id.* At all times the employee has the burden to prove by a preponderance of evidence that the employer's action was taken for an impermissible reason. *Phipps*, 408 N.W.2d at 572.

Stifel's arguments for dismissal of Plaintiff's MWA claim track its attack on the SOX claim. First, it argues that Plaintiff did not engage in any statutorily protected conduct. Second, Stifel asserts that Plain-

tiff cannot demonstrate causation, i.e., that she was terminated as a result of her protected activity. Finally, Stifel argues that Plaintiff's claim fails because it had a legitimate non-retaliatory reason for discharging Plaintiff that is not pretextual. The Court agrees with Stifel.[5]

### (i) Plaintiff's Conduct Is Not Protected Activity Under the MWA.

"To demonstrate statutorily protected activity under the MWA, a plaintiff must identify 'facts that, if proven, would constitute a violation of law ...'" *Ha Xuan Thu v. Park N' Fly, Inc.*, No. 09–2522, 2011 WL 334973, at *4 (D.Minn. Jan. 31, 2011) (quoting *Abraham v. Cnty. of Hennepin*, 639 N.W.2d 342, 355 (Minn.2002). Further, "a mere report for behavior that is problematic or even reprehensible, but not a violation of the law, is not protected conduct under the [MWA]." *Kratzer v. Welsh Co., LLC*, 771 N.W.2d 14, 22 (Minn. 2009). Importantly, as recognized by other federal courts in this district, "[t]he Minnesota Supreme Court has rejected the proposition *'that the reported conduct need only seem, in the eyes of the employee, to be unlawful, even if that conduct is lawful.'*" *Ha Xuan Thu*, 2011 WL 334973, at *5 (quoting *Kratzer*, 771 N.W.2d at 22) (emphasis added). Instead,

> [t]he proper standard to apply when assessing the legal sufficiency of a claim under the [MWA] is to assume that the facts have occurred as reported and then determine ... whether those facts constitute a violation of law.... If it later turns out that the facts are not as the employee reported them in good faith to be, the conduct is protected so long as the facts, if they had been true, would be a violation of the law.

---

**5.** Plaintiff's alleged wrongful termination is the only timely claim under the two-year statute of limitations governing MWA claims. The remaining adverse employment acts alleged

*Kratzer*, 771 N.W.2d at 22–23 (quotation marks omitted).

The Court concludes that Plaintiff did not engage in protected activity under the MWA. As with her SOX claim, the basis of Plaintiff's MWA claim is that she made a series of complaints to Stifel management that are set forth above, i.e. the use of marijuana in the workplace, "undesirables" in the office, office romances, the personal use of office equipment, too much time spent on out-of-office travel, and the like.

The majority of Plaintiff's complaints are simply reports of personal or managerial shortcomings of her colleagues and supervisors—spending too much time on-out-of-office travel, using an office copy machine for personal needs, asking the office assistant to fix a home computer, not properly securing office files, and the like—which do not implicate any violation of the law. And Plaintiff makes much to do about the alleged office romances between Stifel brokers. As was the case with her SOX claim, Plaintiff's complaints are not protected under the MWA just because Plaintiff finds her co-workers' activities to be disturbing or troublesome. *See Hedglin v. City of Willmar*, 582 N.W.2d 897, 902 (Minn.1998) (dismissing firefighters' whistleblower claims and finding that the reports that officers attended fire calls while intoxicated was not protected activity because "[w]hile we find such conduct reprehensible, if in fact it did occur, we can find no statute or rule that is violated by such conduct"); *Yakubek v. Westbrooke Patio Homes Assoc.*, No. 97–506, 1997 WL 613667, at *4 (Minn.Ct.App. Oct. 7, 1997) (holding that employee's reports of marijuana smoking in violation of the employ-

by Plaintiff occurred before April 9, 2008 (two years before this lawsuit was filed) and any claims relating to these acts are therefore time-barred under the MWA.

er's drug policy was not protected activity under the MWA and affirming the summary judgment dismissal of her claims); *Nordling v. N. States Power Co.*, 478 N.W.2d 498, 504 (Minn.1991) (concluding that a report about behavior that "seems distasteful and ... ill-advised, but that is not ... illegal" is not protected under the MWA).

Ultimately, even if the Court assumes that all the facts occurred as Plaintiff reported them, none constitutes a violation of the law. *Kratzer*, 771 N.W.2d at 22–23 (holding that "[t]he proper standard to apply ... is to assume that the facts have occurred as reported and then determine ... whether those facts constitute a violation of law or rule adopted pursuant to law") (internal quotation marks omitted). For example, Plaintiff testified that she never saw T.S. using or selling marijuana, but only assumed that he was based on his own appearance and his association with the so-called "undesirables"—people who, in Plaintiff's opinion, did not dress like the typical Stifel financial investment clients. (Heideman Aff. ¶ 3, Ex. B. at 27.) These facts, even if proven, could not possibly amount to any violation of the law. In sum, because Plaintiff's reports do not implicate a violation of any federal or state law or rule, the Court holds that Plaintiff did not engage in protected activity and, therefore, her MWA whistleblower claim fails as a matter of law.

#### (ii) Plaintiff has Not Proven that She was Terminated Because of Her Complaints to Stifel.

 Even assuming, *arguendo*, that Plaintiff engaged in statutorily protected activity, she has proffered no evidence from which a reasonable jury could conclude that Stifel terminated her because of her complaints. First, Plaintiff was fired more than eight months after her last complaint to supervisors—and years after her prior complaints. While "[t]he passage of time between events does not by itself foreclose a claim of retaliation[,]" *Smith v. St. Louis Univ.*, 109 F.3d 1261, 1266 (8th Cir.1997), a "gap in time between the protected activity and the adverse employment action [does] weaken[ ] an inference of retaliatory motive." *Hesse v. Avis Rent A Car Sys., Inc.*, 394 F.3d 624, 633 (8th Cir.2005); *Crosby v. State*, No. A08–1325, 2009 WL 1587080, at *6 (Minn.Ct. App.2009) ("Without more, [a six-month time gap] is too attenuated to establish a prima facie case [of retaliation]."). Second, "intervening unprotected conduct [can] erode any causal connection" between protected conduct and termination." *Ha Xuan Thu*, 2011 WL 334973, at *5 (quoting *Scroggins v. Univ. of Minn.*, 221 F.3d 1042, 1045 (8th Cir.2000)). Here, even before Plaintiff lost her biggest client, she had job performance issues and was warned that her low production rates could result in decreased pay or possible termination. In fact, that Plaintiff received multiple warnings about her inadequate performance at Stifel "undermines not only [her] prima facie case but also [her] ability to establish that [Stifel's] proffered non-retaliatory reasons for his discharge are pretextual." *Id.* (citing *Cokley*, 623 N.W.2d at 630 (once defendant articulates a legitimate nondiscriminatory reason for the adverse action, burden shifts to plaintiff to establish that the reason is pretext for retaliation)).

#### (iii) Stifel's Stated Reason for Terminating Plaintiff Was Not Pretextual.

 Plaintiff has offered no evidence that would lead a reasonable jury to conclude that its stated reason for Plaintiff's termination was pretextual. "In determining whether a plaintiff has produced sufficient evidence of pretext, the key question is not whether the stated basis for termination actually occurred, but whether the

defendant *believed* it to have occurred." *Macias Soto*, 521 F.3d at 842 (emphasis added). Importantly, "when an employer articulates a reason for discharging the plaintiff not forbidden by law, it is not our province to decide whether that reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination." *Wilking v. Ramsey Cnty.*, 153 F.3d 869, 873 (8th Cir.1998) (quotation omitted); *Maynard v. Cowles Media Co.*, No. CX–99–567, 1999 WL 690200, at *4 (Minn.Ct.App. Sept. 7, 1999) (stating that evidence that the employer's articulated explanation is "subjective, even incorrect," does not, by itself, establish pretext). Finally, "[a]n employee's attempt to prove pretext requires more substantial evidence than it takes to make a prima facie case because … evidence of pretext and retaliation is viewed in light of the employer's justification." *Hilt v. St. Jude Med. S.C., Inc.*, No. 10–987 (RHK/TNL), 2011 WL 2682889, at *8 (D.Minn. July 11, 2011) (quoting *Buytendorp v. Extendicare, Inc.*, 498 F.3d 826, 835–36 (8th Cir.2007)).

Plaintiff speculates that Stifel must have "come up" with a *post hoc* explanation for her discharge because Stifel's computer system generated a document reflecting her termination on August 27—nineteen days after she was terminated. (*See* Doc. No. 82, Pl.'s Obj. to Mot. for Summ. J. at 5 of 10; Doc. No. 83, Pl.'s Exs. in Supp. of Obj. to Mot. for Summ. J. ("Pl.'s Exs."), Ex. E.) This is insufficient to create a material fact regarding Stifel's proffered reason for her discharge and to defeat its summary judgment motion. Plaintiff never alleged or argued that Stifel provided differing explanations for her termination. (*See* Compl. ¶ 21 ("Stifel then terminated Plaintiff on August 8, 2008, at the direction of McCuaig. Stifel stated that it terminated Plaintiff because of a client complaint …").) And, Stifel has consistently maintained that it discharged Plaintiff after her

most valuable customer removed all of her accounts and submitted a written complaint alleging that Plaintiff's trading activities resulted in large losses. "The trier of fact may not simply choose to disbelieve the employer's explanation in the absence of any evidence showing why it should do so." *Hilt*, 2011 WL 2682889 at *8 (quoting *Pineda v. United Parcel Serv., Inc.*, 360 F.3d 483, 487 (5th Cir.2004)).

Here, other than pure speculation, Plaintiff submitted no evidence to show pretext. Moreover, the evidence of Plaintiff's ongoing productivity issues lends further support for Stifel decision to terminate Plaintiff. Because Plaintiff was already struggling to meet Stifel's productivity requirements, the loss of the Ultan accounts had an even greater effect on her employment. Regardless, Plaintiff's speculation is not a basis for a reasonable jury to make a finding of pretext and is insufficient to withstand summary judgment. *Yarborough v. DeVilbiss Air Power, Inc.*, 321 F.3d 728, 730 (8th Cir.2003) ("A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment.") (quoting *Nat'l Bank of Commerce v. Dow Chem. Co.*, 165 F.3d 602, 610 (8th Cir.1999)).

### C. Plaintiff's MPWA Claim

Plaintiff fares no better with her claim under the Minnesota Payment of Wages Act. Minn.Stat. § 181.13 provides that when an employer discharges an employee the "wages or commissions actually earned and unpaid at the time of the discharge are immediately due and payable upon demand of the employee." *Chambers v. The Travelers Companies, Inc.*, 764 F.Supp.2d 1071, 1088 (D.Minn.2011). To recover, Plaintiff must demonstrate that she made a demand for earned and unpaid commissions and that Stifel failed to comply within twenty four hours of her demand.

In her Complaint, Plaintiff seems to allege that Stifel violated Minn.Stat. § 181.13 by not paying her wages, commissions, and bonuses. (Compl. ¶ 34.) But there is no evidence, aside from the bare allegations in her Complaint—which are insufficient to create a genuine issue of fact for trial—that any of the required statutory elements were met. *See Ghane v. West*, 148 F.3d 979, 981 (8th Cir.1998) ("The nonmoving party may not merely rest upon allegations or denials in its pleadings, but must set forth specific facts by affidavits or otherwise showing that there is a genuine issue for trial."). And Plaintiff failed to respond at all, much less in a timely manner, to the following requests for admissions pursuant to Federal Rule of Civil Procedure 36 regarding that issue:

## REQUEST

. . . .

8. Stifel paid Plaintiff all of the commission payments to which she was entitled during her employment with Stifel.

. . .

9. Stifel paid Plaintiff all of the bonus payments to which she was entitled during her employment with Stifel.

. . .

10. Plaintiff did not make a written request to Stifel for allegedly unpaid wages after her employment with Stifel ended.

. . .

11. Plaintiff did not make a written request to Stifel for allegedly unpaid commissions after her employment with Stifel ended.

. . .

12. Plaintiff did not make a written request to Stifel for allegedly unpaid bonuses after her employment with Stifel ended.

(Heideman Aff. ¶ 17, Ex. P.)

■■■ "A failure to respond in a timely manner deems the request admitted, and '[a]ny matter admitted under [Rule 36] is conclusively established....'" *Altheimer v. Hosto & Buchan Law Firm*, No. 07–45, 2007 WL 2750670, at *3 (E.D.Ark. Sept. 18, 2007) (quoting Fed.R.Civ.P. 36(a)-(b)); *see also Luick v. Graybar Elec. Co.*, 473 F.2d 1360, 1362 (8th Cir.1973) (stating that "[u]nanswered requests for admissions render the matter conclusively established" and that "summary judgment may be based on admitted matter.") (citations omitted).

■■■ The decision in *Altheimer*, where a *pro se* plaintiff brought Title VII claims of race discrimination and retaliation, is instructive. The defendant employer propounded requests for admissions to which the plaintiff never responded, and the employer then moved for summary judgment on her claims. The court held that by virtue of plaintiff's failure to respond to the defendant's requests for admissions,

> ... it has been conclusively established that [Plaintiff] disclosed that she had "no previous management or supervisor experience and that [she] had not worked for any law firm prior to" working for Hosto & Buchan, and that such experience was a necessary qualification for the position she sought.... Altheimer has offered neither evidence nor argument tending to show that the stated reason for rejecting her requested promotion was a pretext for discrimination. In fact, Altheimer has admitted, by virtue of her failure to respond to Hosto & Buchan's requests for admissions, that "race was not a factor" in its business decisions with respect to her employment. There is no genuine issue of material fact as to Altheimer's claim for discrimination based on race. Summary judgment therefore should be granted on that claim.

*Id.* The same is true here. By failing to respond to Stifel's requests for admissions,

Plaintiff is deemed to have admitted that Stifel paid all her bonus and commissions payments that she was owed. Further, Plaintiff is deemed to have admitted that she did not make a demand for payment of any allegedly unpaid compensation after her employment with Stifel ended. These admissions are fatal to her MPWA claim. *See Chatfield v. Henderson,* 252 Minn. 404, 90 N.W.2d 227, 231–32 (1958) (stating that under the MPWA "the penalty attaches only after the expiration of 24 hours after [a] demand" and that "[u]ntil there is a demand as required by the statute after ... discharge, the statutory provisions have no application").

In addition, Plaintiff presented no evidence or argument in support of her claim. Indeed, the evidence in the record lends further support for dismissal. For example, Plaintiff had no written contract that guaranteed any bonus payments. (Doc. No. 83, Pl.'s Exs, Ex. F.) Instead, her employment-related documents state that she may be *eligible* for a bonus, leaving the award of bonuses at Stifel's discretion. (*Id.*) As stated above, MPWA is triggered by "wages or commissions actually earned" at the time of termination. Here, "it cannot be said that [Plaintiff] had earned her bonus, because whether she received a bonus was discretionary ..." *Chambers,* 764 F.Supp.2d at 1088 (dismissing the MPWA claim). Plaintiff submitted no evidence that she was eligible for any bonus. On the contrary, Stifel's multiple warnings to Plaintiff regarding her performance suggest that she would not be entitled to a bonus. The same is true of any special commissions, which appear to be directly related to Plaintiff's productivity. In sum, there is no evidence from which a reasonable fact-finder could infer that Stifel violated the MPWA. And, as discussed above, Plaintiff admitted that Stifel remitted any bonus or commissions she was owed, and she proffered no evidence to the contrary.

Accordingly, Plaintiff's MPWA claim fails as a matter of law.

## CONCLUSION

Based on the files, records, and submissions, and for the reasons stated above, **IT IS HEREBY ORDERED** that:

1. Defendant's Motion for Summary Judgment (Doc. No. 67), is **GRANTED.**

**LET JUDGMENT BE ENTERED ACCORDINGLY.**